1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| **FRANCISCO ARRIETA,** | **LEAD CASE 1:14-cv-00400-LJO-JLT** |
| **Plaintiff,** | **MEMBER CASE: 1:14-cv-00401-LJO-JLT**<br>**MEMBER CASE: 1:14-cv-00402-LJO-JLT** |
| **v.** | **MEMBER CASE: 1:14-cv-00403-LJO-JLT**<br>**MEMBER CASE: 1:14-cv-00404-LJO-JLT** |
| **COUNTY OF KERN, and DOES 1 to 100, Inclusive,** | |
| **Defendants.** | **MEMORANDUM DECISION AND ORDER RE COUNTY OF KERN'S MOTIONS TO DISMISS (DOC. 7)** |

16

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

1

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. INTRODUCTION

Plaintiffs in the five (5) above-captioned cases claim to have witnessed and/or videotaped a violent encounter on or about May 7, 2013 between unnamed Kern County Sheriff's Department Deputies (Deputies) and a man unrelated to Plaintiffs. All Plaintiffs claim to have been subjected to unlawful treatment when several Deputies attempted to retrieve the cellular telephones on which video had been recorded. Among other things, Plaintiffs claim Deputies refused for several hours on the evening of May 7, 2013 and again the next morning to let Plaintiffs leave an apartment where Plaintiffs congregated. The County of Kern (the County) responded with separate, but similar, Motions to Dismiss all five complaints pursuant to Fed. R. Civ. P. 12(b)(6). Due to the substantial overlap between these cases, the Court issued an Order to Show Cause why the cases should not be joined. No party objected, and the Court consolidated these cases on April 28, 2014. In light of this procedural history, the Court issues a single Order resolving all five motions to dismiss.[1]

## III. BACKGROUND

### 1. Factual Background[2]

On May 7, 2013 Plaintiffs Maria Melendez, her daughters Sulina and Melissa Quair, and their friends Laura Vasquez and Francisco Arrieta were all at the Kern Medical Center in Kern County, CA.

---

[1] Related case, *T.A. v. County of Kern*, 1:14-cv-00717-LJO-JLT, was filed after the first five cases were consolidated. The Court consolidated it with the others on May 21, 2014. As of the date of this order, Defendants have not moved to dismiss the *T.A.* case.

[2] These background facts are drawn from complaints submitted by the five plaintiffs, the truth of which the court must assume for purposes of a Rule 12(b)(6) motion to dismiss.

1   Around midnight Plaintiffs observed members of the Kern County Sheriff's Department beating an

2   unrelated man. Mr. Arrieta and Ms. Melendez recorded the incident using their cell phones. After the

3   incident, Mr. Arrieta, Ms. Vasquez and Melissa and Sulina Quair went back to Melissa Quair's

4   apartment. At some point in the very early morning on May 8, 2013, Deputies appeared at the apartment

5   and demanded that Plaintiffs turn over the cell phone used to record the incident. Mr. Arrieta resisted

6   turning over his phone because it contained personal information, but offered to make a copy of the

7   video in question. According to Plaintiffs, the Deputies remained at Ms. Quair's residence, refusing to

8   let anyone leave the premise, until Mr. Arrieta finally turned over the phone, after approximately four

9   hours. Mr. Arrieta subsequently left to go to work.

10          Plaintiffs allege that Defendants "continued to harass, threaten, intimidate, pressure, unlawfully

11   touch and/or assault those present at the apartment" during the period in which they were held at the

12   apartment. *See e.g.* Arrieta Compl., 1:14-cv-00400-LJO-JLT, No. 1(hereinafter "Arrieta Compl.")[3], at ¶

13   12. Mr. Arrieta claims that Defendants "interfered with the use" of his cell phone and that it was "seized,

14   converted altered, tampered and/or damaged." Arrieta Compl. at ¶ 101.

15          Plaintiffs allege that Deputies returned to Ms. Quair's apartment around 10 am the same morning

16   and demanded that Plaintiffs produce the other cell phone used to record the previous night's encounter.

17   During this time, Deputies forced Ms. Vasquez and Sulina Quair to stay in the front porch area of the

18   apartment. Ms. Melendez alleges that she was present for this encounter, but it is unclear when she

19   arrived. Deputies demanded that Ms. Vasquez, Ms. Melendez and the Quair sisters remain on the

20   premise for a period of two hours, at which point Deputies were able to obtain a warrant. As above,

21   Plaintiffs claim that that Defendants "continued to harass, threaten, intimidate, pressure, unlawfully

22   touch and/or assault those present at the apartment" during this period without elaboration. Melendez

23   Compl. 1:14-cv-00404-LJO-JLT, No. 1 (hereinafter "Melendez Compl.") at ¶ 12.

24
   _____

25
   [3] For the sake of brevity, the Court will cite only to one version of the complaint, motion to dismiss, or opposition when

26   arguments or allegations are identical.

## IV. STANDARD OF DECISION

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## V. DISCUSSION

### 1. First Cause of Action: Unlawful Search and Seizure

This claim is brought against Defendants pursuant to 42 U.S.C. §§1983 and 1988, which provide a federal cause of action for Plaintiffs who have been deprived of civil liberties under the color of law. All five Plaintiffs seek recovery under this framework. Arrieta Compl. at ¶ 17.

### a. Claims Against Does 1-100

Plaintiffs do not state whether claims against Does 1-100 are brought against them in their personal or official capacities. Thus this Court looks to the "course of proceedings" to determine Plaintiffs' intentions. *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1123 (9th Cir. 2007). Here, Does 1-100 are employees of the County Defendant. Arrieta Compl. at ¶ 6. To the extent Plaintiffs attempt to sue these employees in their official capacity, such suits are construed as suits against the entity of which the official is an officer. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, it would be redundant to name more than the County. Plaintiffs' inclusion of up to 100 individual officers suggests that they mean to hold each liable in their individual capacities. Additionally, Plaintiffs allege that the unnamed Defendants "acted under color law"- which is an element of liability in personal capacity suits. Arrieta Compl. at ¶ 26. Thus, this Court finds that Plaintiffs seek to hold individual defendants liable in their personal capacities.

Plaintiffs Arrieta, Vasquez, S. Quair and M. Quair allege that they were unlawfully seized when Deputies appeared at M. Quair's apartment and prevented them from leaving for four hours. Plaintiffs Vasquez, Melendez, S. Quair and M. Quair allege that they were unlawfully seized when Defendants reappeared at M. Quair's the next morning and held them for two hours, while they procured a warrant.

"[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. at 25

5

(emphasis in original). The Fourth Amendment is invoked when an officer restrains an individual's "freedom to walk away" through physical force or a show of authority. *United States v. Mendenhall*, 446 U.S. 544, 553 (1980); *Terry v. Ohio*, 392 U.S. 1, 16 (1968); *see also Davis v. Mississippi*, 394 U.S. 721, 726-27 (1969) ("Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'"). "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original). An officer must have a "reasonable suspicion" that the individual is involved with criminal conduct to justify a temporary detention. *Terry v. Ohio,* 392 U.S. at 20. If the detention is prolonged to the point where it becomes a de facto arrest, this requirement is elevated to probable cause. *Id.* Generally, whether an arrest is constitutionally valid,

> . . .depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that *the petitioner had committed or was committing an offense*.

*Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (emphasis added). While Plaintiffs' Complaints are short on details, they do allege that Deputies detained them through a show of authority without reasonable suspicion or probable cause. Arrieta Compl. at ¶¶ 19-20. Defendants argue that the officers had probable cause to detain these Plaintiffs because they were in possession of evidence of a crime. Defendants cite *Cupp v. Murphy*, 412 U.S. 291 (1973), for the holding that "an intrusion by seizure of readily-destructible evidence does not violate the 4[th] and 14[th] amendments [in the absence of another violation of constitutional rights]." Defs.' Mot. to Dismiss, 1:14-cv-00400-LJO-JLT, Doc. No. 7-1 (hereinafter "Defs.' Mem.") at 5. *Cupp*, however, is distinguished by the fact that the detainee in this case was a suspect in the crime police were investigating. *Cupp*, 412 U.S. at 293. Thus the probable cause analysis turned on whether arresting officers had sufficient evidence that the detainee was involved in the perpetration of the crime. *Id.*

Assuming the truth of the facts alleged by Plaintiffs, Defendants did not have probable cause to believe that <u>Plaintiffs</u> were involved in the perpetration of a crime. Thus, Defendants cannot rely on *Cupp* to justify seizure of Plaintiffs without a warrant. Defendants' Motions to Dismiss Plaintiffs' First Causes of Action are DENIED as to Does 1-100.

### b.    Claims Against the County

Municipalities and local governments can be liable for damages under Section 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Local governments are not liable, however, for simply employing a tortfeasor. *Id.* at 694-95 ("Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

A government entity may be liable under Section 1983 claim if a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Details of these policies need to be alleged with enough specificity to raise them beyond a "formulaic recitation of a cause of action's elements." *Id.* They must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "plausibly suggest an entitlement to relief." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

The Ninth Circuit has recognized four distinct ways[4] to demonstrate a municipal policy or custom:

> (1) "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury .  ."
> (2) where "the constitutional tort was the result of a longstanding practice

---

[4] Many cases combine the first two prongs. *See, e.g. Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). This Court follows the example laid out in *Price* for simplicity.

1    or custom which constitutes the standard operating procedure' of the local
     government entity . . ."
2    (3) by showing that "the tortfeasor was an official whose acts fairly
     represent official policy such that the challenged act constituted an official
3    policy . ." or
     (4) by showing that "an official with final policymaking authority either
4    delegated that authority to, or ratified the decision of, a subordinate."

5    *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (internal quotation marks and citations omitted).

6    Liability under the first prong arises through the adoption of a formal policy, defined as "a

7    deliberate choice to follow a course of action ... made from among various alternatives by the official or

8    officials responsible for establishing final policy with respect to the subject matter in question." *Oviatt*

9    *By & Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (citing *Pembaur v. City of*

10   *Cincinnati*, 475 U.S. 469, 483-484 (1986)). Plaintiffs claim the County "maintained or permitted an

11   official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs set

12   forth above and based upon the principles set forth in *Monell* . . ." Arrieta Compl. at ¶ 25. Plaintiffs,

13   however, do not allege facts suggesting the County has adopted such a policy- or even clearly identify

14   what such a policy would look like. Thus they have not alleged a claim under the first prong.

15   A plaintiff can maintain a claim under the second prong by alleging that a "longstanding practice

16   or custom" has evolved, but this requires a showing of more than "isolated or sporadic incidents."

17   *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).  Rather, "the custom must be so

18   'persistent and widespread' that it constitutes a 'permanent and well settled [municipal] policy.'" *Id*. The

19   line between "isolated or sporadic incidents" and "persistent and widespread conduct" is not clearly

20   delineated, although where more than a few incidents are alleged, the determination appears to require a

21   fully-developed factual record. *Compare Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir.

22   1989) (single incident of excessive force inadequate to establish liability); *Meehan v. County of Los*

23   *Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents insufficient) with *Menotti v. City of Seattle*,

24   409 F.3d 1113, 1147 (9th Cir. 2005) (triable issue of fact existed as to whether Seattle had an

25   unconstitutional policy or custom of suppressing certain political speech based on the testimony of

26   several individuals that their entry to a particular area was permitted by police only after they removed

8

offending buttons and stickers, coupled with the testimony of the officer in charge that the City would not permit "demonstrations" in the area). Plaintiff do not allege facts suggesting a "longstanding practice or custom" that is related to their claims. Thus they have not alleged sufficiently a claim under the second prong.

Liability under the third prong relates to the Supreme Court's holding "that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480 ("[T]he power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level."). This liability only attaches "where the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered*" and a "deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 481, 483 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). A failure to train allegation only satisfies prong three when it amounts to a policy of "deliberate indifference." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)(quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989))("Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely."). "Mere negligence in training or supervision, however, does not give rise to a *Monell* claim." *Id.* This determination is necessary because Section 1983 does not encompass vicarious or supervisor liability. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010)("[T]o hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law creating an end run around *Monell*.").

Plaintiffs allege the County is liable for its failures "with respect to hiring, training, supervising, disciplining and retaining" Deputies. Arrieta Compl. at ¶ 14. Plaintiffs also claim the County "was "responsible for implementing, maintaining, sanctioning and/or condoning policies, customs, practices,

1    training and/or supervision of officer conduct, including, but not limited to, with respect to use of force"

2    and that "Defendants were deliberately indifferent to the probability of occurrence of such acts . . ." *Id.*

3    at ¶¶ 22, 25. While Plaintiffs allege the County has a policy of "deliberate indifference," it is unclear

4    what they mean by "such acts." Indeed, Plaintiffs allege very few actions taken by Deputies, none of

5    which could be construed as amounting to a policy of deliberate indifference to constitutional

6    deprivation. Thus, Plaintiffs have failed to do any more than simply regurgitate the applicable standard.

7    They have not set forth facts that could plausibly support a claim under the third prong.

8         The fourth prong reflects the fact that policymakers may delegate their authority to another

9    official. Liability may arise "if a particular decision by a subordinate was cast in the form of a policy

10   statement and expressly approved by the supervising policymaker ... [or] if a series of decisions by a

11   subordinate official manifested a 'custom or usage' of which the supervisor must have been aware."

12   *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (quoting *City of St. Louis v. Praprotnik*, 485

13   U.S. 112, 126 (1988)).  However, a policymaker must "approve a subordinate's decision *and the basis*

14   *for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision."

15   *Id.* at 1348.

16    "[U]nconstitutional discretionary actions of municipal employees generally are not chargeable to the

17   municipality under section 1983." *Id.* Because there are many factual issues tied up in a resolution of

18   such issues, "[o]rdinarily, ratification is a question for the jury." *Christie v. Iopa*, 176 F.3d 1231, 1238-

19   39 (9th Cir. 1999).

20        Plaintiffs claim the County "ratified or acquiesced in the constitutional deprivation, or were

21   deliberately indifferent [to deprivations]." Arrieta Compl. at ¶ 14. Again, Plaintiffs allege no facts

22   supporting these claims. Plaintiffs claim that the County is liable for the actions of Deputies because it

23   "ratified" alleged constitutional deprivations. *Id.* Plaintiffs, however, do not allege that the officers'

24   supervisors actually reviewed and approved of the officers' conduct as would be required under a

25   ratification theory of municipal liability. *Praprotnik*, 485 U.S. at 127 ("If the authorized policymakers

26   approve a subordinate's decision and the basis for it, their ratification would be chargeable to the

10

1   municipality because their decision is final."). Thus, Plaintiffs have failed to establish a claim under the

2   fourth prong.

3       For these reasons, Defendants' Motions to Dismiss Plaintiffs' First Causes of Action are

4   GRANTED as to the County of Kern.

5       **2.**      **Second Cause of Action: California Civil Rights Acts**

6       All five Plaintiffs claim that their rights under California civil rights law have been violated.

7   Arrieta Compl. at ¶ 31. Specifically, they seek to recover under California Civil Code Sections 43, 51,

8   51.5, 51.7, 52.1 and Article 1 Section 13 of the California Constitution.

9       **a.**      **Section 51 Claims**

10      California Civil Code Sections 51.0, 51.5, and 51.7 allow citizens to recover if they have been

11  discriminated against on the basis of "sex, race, color, religion, ancestry, national origin, disability,

12  medical condition, genetic information, marital status, or sexual orientation" or "because of political

13  affiliation . . .or position in a labor dispute." Since Plaintiffs do not claim that they were subject to any

14  categorical discrimination, they do not present any plausible claims for relief under these laws.[5] This

15  Court GRANTS Defendants' Motions to Dismiss claims brought pursuant to California Civil Code

16  Sections 51.0, 51.5 and 51.7 as to all Defendants.

17      **b.**      **Section 43 Claims**

18      California Civil Code section 43 codifies causes of action for assault, battery, and invasion of

19  privacy, providing, "[b]esides the personal rights mentioned or recognized in the Government Code,

20  every person has, subject to the qualifications and restrictions provided by law, the right of protection

21  from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal

22  relations." Cal. Civ. Code § 43. While Plaintiffs allege that they were detained, *see* Section (V)(1)(a),

23  *supra,* they do not claim that Defendants restrained them physically or allege with any detail how this

24  ――――――――――――――――

25  [5] Curiously, Defendants refer to Does 1-100 as "natural-born" on three separate occasions in their Memos. Defs.' Mem. at 6,
    7, & 8. While this suggests that Defendants have read the Complaints as alleging discrimination on the basis of national
26  origin, the Court cannot identify any such allegations.

1  detention was enforced. Arrieta Compl. at ¶ 36 (Alleging, without further explanation that , "[i]nasmuch

2  as Plaintiff was unlawfully arrested, the use of excessive force against him and the unlawful seizure of

3  Plaintiff was a violation his clearly established rights as secured by the Fourth Amendment."). Nor do

4  Plaintiffs describe how Defendants may have defamed or assaulted them. Since this Court cannot

5  determine Plaintiff's basis for invoking liability under Section 43, it will GRANT Defendants' Motions

6  to Dismiss claims under this section, as to all Defendants.

7       **c.**  **Bane Civil Rights Act Claims**

8      The Bane Civil Rights Act provides a private right of action under California law for citizens

9  who have had their state or federal constitutional rights violated through threats or coercion. Cal. Civ.

10  Code § 52.1. ("Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or

11  (b), except upon a showing that the speech itself threatens violence against a specific person or group of

12  persons . . ."); *see also Venegas v. County of Los Angeles*, 11 Cal. Rptr. 3d 692, 713 (2004) (Baxter, J.

13  concurring) (characterizing burden of showing "threats, intimidation, or coercion" as minimal: "it should

14  not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or

15  constitutional right, including mere technical statutory violations, as incorporating a threatening,

16  coercive, or intimidating verbal or written component").

17      Defendants argue that Plaintiffs claims should be dismissed because "threats, intimidation, [and]

18  coercion" are alleged only in a conclusory manner and that "there are no facts to show a plausible claim

19  for them." Defs.' Mem at 6. This Court has previously explained that in evaluating a Bane Act Claim,

20  "there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent

21  in the seizure or use of force." *Dillman v. Tuolumne Cnty*., 1:13-CV-00404 LJO, 2013 WL 1907379 at

22  *21 (E.D. Cal. May 7, 2013). As discussed in Section V(1)(a), Plaintiffs have adequately alleged they

23  were seized by Defendants.

24      For these reasons, the Court DENIES Defendants' Motions to Dismiss claims brought pursuant

25  to the Bane Act, Cal. Civ. Code § 52.1, as to all defendants.

26     **3.**  **Third Cause of Action: False Arrest and/or Imprisonment**

1    All five Plaintiffs bring claims for "False Arrest and/or Imprisonment under California law."

2    Arrieta Compl. at ¶ 45. These claims are based on the allegations that "Defendants refused to allow

3    anyone, including, but not limited to Plaintiff to enter and/or exit the apartment . . ." *Id.* at ¶ 46. During

4    this time Defendants allegedly engaged in some behavior Plaintiffs experienced as threatening until Mr.

5    Arrieta turned over his cell phone. *Id.* at ¶47.

6        While Plaintiffs do not identify the statutory or judicial basis for these claims, Defendants

7    correctly identify the elements of false arrest under California law as "(1) the nonconsensual, intentional

8    confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however

9    brief." *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000); *George v. City of Long Beach*,

10   973 F.2d 706, 710 (9th Cir. 1992). The tort "requires some restraint of the person and that he be

11   deprived of his liberty or compelled to remain where he does not wish to remain, or go where he does

12   not wish to go." *Webb v. Olive Garden Italian Restaurants/Darden Restaurants*, 424 F. App'x 660, 661

13   (9th Cir. 2011) (quoting *Collins v. Los Angeles Cnty.*, 241 Cal. App. 2d 451, 459 (1966)).

14       Defendants assert that Plaintiffs fail to sufficiently allege the first prong of the tort of false arrest

15   because they do not allege that their confinement was against their will. Notably, Plaintiffs were

16   detained, first in the middle of the night and then again in the morning at Plaintiff M. Quair's apartment.

17   The facts, even when read in a light most favorable to Plaintiffs, suggest that the only person who may

18   have wished to leave the apartment during either period of detention was Mr. Arrieta, who needed to go

19   to work. Even this claim is tenuous though, because it is unclear that Mr. Arrieta was held in the

20   apartment longer than he wished to be. Mr. Arrieta claims that he was "forced to turn over his cell phone

21   to avoid missing work," but it does not state that he wished to leave the apartment earlier than he

22   actually did. Arrieta Compl. at ¶47. For these reasons, the Court will GRANT Defendants' motions

23   dismiss claims for "False Arrest and/or Imprisonment under California law" as to all defendants.

24       **4.    Fourth Cause of Action. Assault and Battery**

25       Plaintiffs Arrieta, Melendez and S. and M. Quair assert claims for "Assault and Battery under

26   California law." Arrieta Compl. at ¶ 52. Plaintiff Vasquez asserts a claim for assault only. Vasquez

Compl. at ¶ 57. These claims are based on allegations that Defendants "caused threats, force and offensive touching and/or violence to be used upon and against Plaintiff, on or about his head and/or body . . ." Arrieta Compl. at ¶ 54.

To prevail on a claim of battery under California law, a plaintiff must establish that:

> "(1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff;
> (2) the plaintiff did not consent to the touching;
> (3) the plaintiff was harmed or offended by defendant's conduct; and
> (4) a reasonable person in plaintiff's situation would have been offended by the touching."

*Avina v. United States*, 681 F.3d 1127, 1130-31 (9th Cir. 2012) (citing Judicial Council of Cal., Civil Jury Instructions No. 1300 ("Battery") (2012) and *Ashcraft v. King*, 228 Cal. App. 3d 604, 610 (1991)). Defendants argue that Plaintiffs do not satisfy the first prong of this analysis because the Complaints allege "no facts from which the reader can infer any touching happened, much less a harmful or offensive one." Defs.' Mem. at 7. This Court agrees that Plaintiffs' allegations are conclusory.

"An assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." *Lowry v. Standard Oil Co. of Cal.,* Cal. App. 2d 1, 6 (1944). As with the battery claims, Plaintiffs fail to allege that Defendants engaged in any conduct or speech that would meet this standard.

For these reasons, the Court will GRANT Defendants' motions to dismiss claims brought under California Assault and Battery law as to all defendants.

**5.** **Fifth Cause of Action 5: Intentional Infliction of Emotional Distress**

All five Plaintiffs assert claims for "Intentional Infliction of Emotional Distress under California Law." Arrieta Compl. at ¶60.

Intentional infliction of emotional distress requires "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard for the probability of causing, emotional distress." *Bosetti v. U.S. Life Ins. Co. in City of New York*, 175 Cal. App 4th 1208, 1242 (2009) (internal quotations omitted). "The conduct must be so extreme and outrageous as to exceed all bounds of that

14

1   usually tolerated in a civilized society." *Id.*

2   Plaintiffs claim that "[t]he conduct of Defendants DOES 1 through 100, inclusive, as alleged

3   above was carried out by said Defendants . . .Such conduct was outrageous and carried out with the

4   intent to cause Plaintiff[s] extreme and severe emotional distress." Arrieta Compl. at ¶61. This claim

5   incorporates by reference paragraphs 1-58. *Id.* at ¶ 59. Thus, it is unclear what conduct Plaintiffs allege

6   is "extreme and outrageous." However, the Complaint contains no examples of conduct "so extreme and

7   outrageous as to exceed all bounds of that usually tolerated in a civilized society." For these reasons, the

8   Court will GRANT Defendants' Motions to Dismiss claims brought under California Intentional

9   Infliction of Emotional Distress law as to all defendants.

10         **6.**    **Sixth Cause of Action: Negligence**

11   All five Plaintiffs assert claims for "General Negligence under California Law" against the

12   County and Does 1 to 100. *Id.* at ¶67.

13   Defendants correctly point out that Section 815 of the California Government Code does not

14   allow public entities such as the County of Kern to be held liable for common law torts, such as general

15   negligence. Cal. Gov't Code § 815(a) ("Except as otherwise provided by statute: A public entity is not

16   liable for an injury, whether such injury arises out of an act or omission of the public entity or a public

17   employee or any other person."); *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 899 (2008)

18   ("Moreover, our own decisions confirm that section 815 abolishes common law tort liability for public

19   entities.").

20   Defendants, however, fail to acknowledge that Section 815.2 "is one such statute." *Hoff v.*

21   *Vacaville Unified Sch. Dist.*, 19 Cal. 4th 925, 932 (1998). Section 815.2(a) provides that "A public entity

22   is liable for injury proximately caused by an act or omission of an employee of the public entity within

23   the scope of his employment if the act or omission would, apart from this section, have given rise to a

24   cause of action against that employee...." Cal. Gov't Code § 815.2. Public employees are liable for

25   injuries caused by their acts or omissions to the same extent as private persons. Cal. Gov't Code § 820.

26   "Through this section, the California Tort Claims Act expressly makes the doctrine of *respondeat*

15

*superior* applicable to public employers." *Hoff,* 19 Cal. 4th at 932. "Thus, the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person and the public entity is vicariously liable for any injury which its employee causes to the same extent as a private employer." *Gates v. Superior Court*, 32 Cal. App. 4th 481, 519 (1995) (internal citations and quotation marks omitted). "A public entity, as the employer, is generally liable for the torts of an employee committed within the scope of employment if the employee is liable." *Thomas v. City of Richmond*, 9 Cal. 4th 1154, 1186 (1995) (In Bank) (internal citations omitted). Since Plaintiffs' allegations against the County are premised on conduct of County employees "acting within the course and scope of their employment", there is a statutory basis for bringing suit against the County.

Under California law, the elements of negligence are:

> (1) defendant's obligation to conform to a certain standard of conduct for
> the protection of others against unreasonable risks (duty);
>  (2) failure to conform to that standard (breach of the duty);
>  (3) a reasonably close connection between the defendant's conduct and
> resulting injuries (proximate cause); and
> (4) actual loss (damages).

*Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)). Plaintiffs allege that Deputies "had a duty to provide local law enforcement services safely and appropriately without causing harm to Plaintiff." Arrieta Compl. at ¶ 68.[6] They claim that Defendants breached this duty when they "unlawfully seized, held, attacked and arrested [Plaintiffs]." *Id.*

Plaintiffs' legal claims are unsupported by factual allegations. This Court cannot determine what specific acts or omissions Plaintiffs claim constituted a breach of duty. Neither can this Court identify what "actual loss" Plaintiffs suffered. Plaintiffs claim that they suffered, "severe physical injuries and extreme emotional distress." *Id*. at ¶ 68. However, these allegations are also conclusory and fail to

---

[6] California courts have recognized that police officers have a duty "to use reasonable care in deciding to use and in fact using deadly force." *See, e.g. Brown v. Ransweiler*, 171 Cal. App. 4th 516, 529 (2009). It remains an "open question" whether such a duty exits in other situations. *Id.* Because Plaintiffs' negligence claims are critically deficient in other respects, the Court will not address the duty issue at this time.

1   present sufficient factual matter to support viable claims.

2          For these reasons, the Court will GRANT Defendants' motions to dismiss Plaintiffs' negligence

3   claims as to Does 1-100. Because claims against the County Defendant rely on the viability of claims

4   against Does 1-100, this Court also GRANTS Defendants' motions to dismiss claims brought pursuant

5   to Plaintiffs' sixth causes of action as to the County of Kern as well.

6          **7.      Seventh Cause of Action: Conversion and Trespass to Chattel**

7          Plaintiffs Arrieta and Melendez assert claims for "Conversion and/or Trespass to Chattels under

8   California Law." Arrieta Compl. at ¶ 72. In support of these allegations, Plaintiffs claim that Deputies

9   "seized, converted, damaged and/or at minimum trespassed against the chattel of Plaintiff." *Id*. at ¶ 74.

10  Plaintiffs claim that they "suffered and seek[] to recover general and special damages in an amount

11  according to proof at trial." *Id.*

12         "Conversion is the wrongful exercise of dominion over the property of another." *Farmers Ins.*

13  *Exch. v. Zerin*, 52 Cal. App. 4th 445, 451 (1997). The elements of conversion are: "the plaintiff's

14  ownership or right to possession of the property at the time of the conversion; the defendant's conversion

15  by a wrongful act or disposition of property rights; and damages." *Id.* "In particular, an actionable

16  deprivation of use "must be for a time so substantial that it is possible to estimate the loss caused

17  thereby. A mere momentary or theoretical deprivation of use is not sufficient unless there is a

18  dispossession." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1357 (2003).

19         Defendants argue that claims for conversion should fail because Plaintiffs do not allege a

20  "substantial interference with possession or the right thereto." Defs.' Mem. at 9. This Court agrees. This

21  Court cannot determine whether Plaintiffs claim that they were permanently dispossessed of their cell

22  phones, or if they were returned after a negligible period of time. Nor can this Court determine how

23  Plaintiffs were damaged by the loss of their cell phones (temporary or otherwise) or if Plaintiffs claim

24  that the phones themselves were damaged.

25         Under California law, trespass to chattels "lies where an intentional interference with the

26  possession of personal property *has proximately caused injury*." *Hamidi*, 30 Cal. 4th 1350-51 (emphasis

1  in original) (internal citations omitted). Defendants also argue that claims for trespass for chattel should

2  fail because Plaintiffs fail to allege with particularity any damages that may have resulted from the

3  alleged dispossession of their cell phones. Defs.' Mem. at 9. As discussed in the paragraph above, this

4  Court agrees.

5      For these reasons, the Court will GRANT Defendants' Motions to Dismiss claims brought

6  pursuant to Plaintiffs Arrieta and Melendez' seventh causes of action as to all Defendants.

7      **8.      Eighth Cause of Action: Civil Conspiracy**

8      All five Plaintiffs assert claims for "Civil Conspiracy." Arrieta Compl. at ¶ 79. These are the

9  eighth causes of action for Plaintiffs Arrieta and Melendez and the seventh causes of action for Plaintiffs

10  Vasquez and S. and M. Quair.

11      "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who,

12  although not actually committing a tort themselves, share with the immediate tortfeasors a common plan

13  or design in its perpetration." *Klistoff v. Superior Court*, 157 Cal. App. 4th 469, 479 (2007). The

14  elements of an action for civil conspiracy are "(1) formation and operation of the conspiracy, and (2)

15  damage to plaintiff resulting from an act or acts done in furtherance of the common design." *Id.*

16      Defendants urge this Court to dismiss the Conspiracy claims because Conspiracy is not an

17  independent cause of action. Defs.' Mem. at 9. Plaintiffs base their conspiracy claims on allegations that

18  "Defendants aided, abetted, approved, ratified and/or deliberately and knowingly failed, refused and/or

19  refrained from intervening in or stopping the misconduct alleged herein; and/or deliberately and or

20  deliberately and knowingly failed, refused, and/or refrained from promptly and accurately reporting such

21  misconduct." Arrieta Compl. at ¶ 81. This claim incorporates by reference paragraphs 1-78. *Id.* at ¶ 79.

22  This Court agrees that Plaintiffs do not identify what misconduct is the subject of the alleged conspiracy.

23  Further, this Court could find no examples of conduct alleged in paragraphs 1-79 that support either the

24  formation of a conspiracy or the existence of resulting damages. For these reasons, the Court will

25  GRANT Defendants' motions to dismiss claims brought pursuant to Plaintiffs' causes of action brought

26  pursuant to California conspiracy law, as to all Defendants.

**9.      Ninth Cause of Action: Takings Under Federal and California Law**

Plaintiffs Arrieta and Melendez bring claims of wrongful taking under Article, 1 Section 19 of the California Constitution and the Fifth Amendment of the U.S. Constitution. *Id*. at ¶ 86. Plaintiffs base these claims on allegations that Deputies "seized, converted, altered, tampered and/or damaged Plaintiff's private cell phone without just compensation." *Id*. at ¶ 87.

Article I, Section 19 of the California Constitution governs eminent domain. Cal. Const. art. I, § 19(a). ("Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."). This provision compensates the owners of real property taken for public improvement by the process of eminent domain and provides retroactive compensation through reverse condemnation. *Customer Co. v. City of Sacramento*, 10 Cal. 4th 368 (1995) (holding that because the injury was not caused by a public improvement operating as deliberately planned and constructed, the plaintiff's claim was not an inverse condemnation claim but a claim subject to the Tort Claims Act and its attendant immunities); *see also* 8 Witkin, Summary 10th (2005) Const. Law, § 1132, p. 767. To state a cause of action for inverse condemnation, the plaintiff must allege a defendant "substantially participated in the planning, approval, construction, or operation of a public project or improvement which proximately caused injury to plaintiff's property." *Wildensten v. E. Bay Reg'l Park Dist.*, 231 Cal. App. 3d, 976, 979-80 (1991).

No facts alleged by Plaintiffs suggest Defendants were engaged in the construction or operation of any public project or improvement that affected Plaintiffs. In fact, there appears to be no basis for Plaintiffs' eminent domain claims. Thus, the Court will GRANT Defendants' motions to dismiss claims brought pursuant to Plaintiffs' causes of action brought pursuant to Article 1, Section 19 of the California Constitution, as to all Defendants. Because amendment would be futile, these motions are granted WITHOUT LEAVE TO AMEND.

The "Takings Clause" of the Fifth Amendment reaches further than eminent domain. *See, e.g. Andrus v. Allard*, 444 U.S. 51, 65 (1979) (upholding statutes governing sale of bald eagle artifacts). However, "not every destruction or injury to property by such action is a constitutional taking." *E.*

*Enterprises v. Apfel*, 524 U.S. 498, 500 (1998). To assert a claim under the "Takings Clause" of the Fifth Amendment, the Supreme Court has "invariably found 'permanent physical occupation of real property'" constitutes taking. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427 (1982). In contrast, "temporary invasions" or government actions resulting in only "consequential damages" have historically been found non-compensable. *Id.*

Here, Plaintiffs fail to allege that property interests in their cell phones were permanently invaded. In fact, Plaintiff Melendez does not even clearly claim that her phone was seized.[7] Further, Plaintiffs do not allege damages that resulted from any temporary period of deprivation. For these reasons, the Court will GRANT Defendants' motions to dismiss claims brought pursuant to Plaintiffs' causes of action brought pursuant to the Takings Clause of the Fifth Amendment of the U.S. Constitution, as to all Defendants.

### 10.     Tenth Causes of Action: First Amendment Violations

Plaintiffs Arrieta and Melendez bring claims for violations of their rights under the First Amendment of the U.S. Constitution of freedom of speech and press. Arrieta Compl. at ¶ 93. In support of these allegations, Plaintiffs claim that they were "unlawfully prohibited from publishing, circulating, [or] distributing the material on [their] cell phone[s]." *Id.* at ¶ 94. However, the Complaint is silent as to how they were prohibited from publishing the materials. Plaintiffs allege that Mr. Arrieta turned over his phone at some point to Defendants. He does not claim, however, that video recordings were destroyed or that the phone was never returned to him. Plaintiffs' Opposition Memos fail to address these defects. While Plaintiffs claim in their oppositions that their Complaints allege that "material within the cell phone was tampered, destroyed, and/or altered" by Defendants, this is untrue. Arrieta Opposition at 14-15. What plaintiffs allege in their complaints is that the *phones* themselves were "seized, converted, altered, tampered and/or damaged." Arrieta Compl. at ¶¶ 87, 101. The use of the disjunctive "and/or"

---

[7] Ms. Melendez's account of events ends with the statement that Defendants eventually produced a warrant. Presumably, her phone was confiscated sometime thereafter. Melendez Compl. 1:14-cv-00402 Doc. 1 at ¶¶ 19-20.

1  compounds the confusion surrounding these claims.

2      For these reasons, the Court will GRANT Defendants' motions to dismiss claims brought

3  pursuant to Plaintiffs' tenth causes of action brought pursuant to the First Amendment of the U.S.

4  Constitution, as to all Defendants.

5      **11.   Eleventh Cause of Action: Deprivation of Property without Due Process**

6      Plaintiffs Arrieta and Melendez bring claims for violations of their rights under the Fourteenth

7  Amendment of the U.S. Constitution, for deprivation of property without substantive due process. *Id*. at

8  ¶ 100. The basis for these claims is that Defendants "unreasonably interfered with the use of Plaintiff's

9  personal cell phone" and that cell phones were "unlawfully seized, converted, altered, tampered and/or

10 destroyed." Arrieta Compl. at ¶ 101.

11     The right to substantive due process "protects against government power arbitrarily and

12 oppressively exercised." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846. (1998). The Supreme Court

13 has made it clear that only official conduct that "shocks the conscience" is cognizable as a substantive

14 due process violation. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (citing *Lewis,* 523 U.S. at

15 846). The Supreme Court also requires a "careful description of the asserted fundamental liberty interest

16 for the purposes of substantive due process analysis; vague generalities, such as 'the right not to be

17 talked to', will not suffice." *Chavez v. Martinez*, 538 U.S. 760, 775-76 (2003).

18     Plaintiffs do not actually allege that Defendants' conduct invaded a "fundamental liberty

19 interest." Nor can this Court find evidence of this. Further, an interference with use of a cellular phone is

20 not the sort of conduct that "shocks the conscience." For these reasons, the Court will GRANT

21 Defendants' motions to dismiss claims brought pursuant to Plaintiffs' eleventh causes of action, as to all

22 Defendants.

23     **12.   Twelfth Cause of Action: Invasion of Privacy**

24     In their twelfth causes of action, Plaintiffs Arrieta and Melendez bring claims of invasion of

25 privacy under California law. Arrieta Compl. at ¶ 107. The basis for these claims is that Defendants

26 perused through Plaintiffs' cell phones without their consent and then "disseminated, and/or distributed"

21

1  their contents. Arrieta Compl. at ¶ 108.

2      The California Supreme Court recognizes two legal theories as providing separate ways to insure

3  privacy based on either the California Constitution or the common law. *Ignat v. Yum! Brands, Inc.*, 214

4  Cal. App. 4th 808, 820 (2013). Because Plaintiffs allege violations "under California law," rather than

5  the state constitution, the Court will treat their claims as arising under common law. *Id.* at 821 (". . .

6  alleging a violation of a person's common-law right to privacy is not the equivalent of alleging a

7  violation of the constitutional right to privacy. Because [Plaintiff] did not allege the latter violation, she

8  was not entitled to have the summary judgment motion evaluated for constitutional privacy.").[8]

9      Elements of the common law tort are "(1) public disclosure (2) of a private fact (3) which would

10  be offensive and objectionable to the reasonable person and (4) which is not of legitimate public

11  concern." *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 215 (1998). "The right to privacy is

12  violated only by public disclosure to the public in general, or to a large number of persons, as

13  distinguished from an individual or a few persons." *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1659

14  (1993).

15      Plaintiffs do not allege that Defendants disclosed the personal contents of their cell phones "to

16  the public in general, or to a large number or persons." Neither do plaintiffs claim that materials

17  allegedly "disseminated, and/or distributed" were "offensive and objectionable." Rather, Plaintiffs claim

18  that Defendants "were able to view personal information such as pictures, messages, contacts, etc. . ."

19  Arrieta Opposition at 15. Plaintiffs provide no reason to believe that dissemination of such materials

20  would be offensive or objectionable.

21      For these reasons, the Court will GRANT Defendants' motions to dismiss claims brought

22  pursuant to Plaintiffs' twelfth causes of action, as to all Defendants.

23                    **VI. <u>CONCLUSION AND ORDER</u>**

24

25  _____

26  [8] Therefore, Defendants' reliance on constitutional jurisprudence in their motions to dismiss is incorrect. In the interest of judicial economy, the Court evaluates *sua sponte* the validity of Plaintiffs' claims under common law standards.

1    For the reasons discussed, above the Court GRANTS in PART and DENIES in PART

2    Defendants' Motions to Dismiss, as follows:

3    Defendants' Motions to Dismiss Plaintiffs' First Causes of Action are DENIED as to Does 1-

4    100.

5    Defendants' Motions to Dismiss Plaintiffs' First Causes of Action are GRANTED as to the

6    County of Kern.

7    Defendants' Motions to Dismiss claims brought pursuant to California Civil Code Sections 51.0,

8    51.5 and 51.7 are GRANTED as to all Defendants.

9    Defendants' Motions to Dismiss claims brought pursuant to California Civil Code Section 43 are

10   GRANTED as to all Defendants.

11   Defendants' Motions to Dismiss claims brought pursuant to California Civil Code Section 52.1

12   are DENIED as to all Defendants.

13   Defendants' Motions to Dismiss Plaintiffs' Third, Fourth, Fifth, and Sixth Causes of Action are

14   GRANTED as to all Defendants.

15   Defendants' Motions to Dismiss Plaintiffs Arrieta and Melendez's Seventh Causes of Action are

16   GRANTED as to all Defendants.

17   Defendants' Motions to Dismiss Plaintiffs Arrieta and Melendez's Eighth Causes of Action and

18   Plaintiffs Vasquez and S. and M. Quair's Seventh Causes of Action are GRANTED as to all Defendants.

19   Defendants' Motions to Dismiss Plaintiffs Arrieta and Melendez's Ninth, Tenth, Eleventh and

20   Twelfth Causes of Action are GRANTED as to all Defendants.

21   All claims are dismissed WITH LEAVE TO AMEND, with the exception of Plaintiffs Arietta

22   and Melendez' claims for taking under the California Constitution. These claims, which are part of

23   Plaintiffs Arietta and Melendez' Ninth Causes of Actions, are not granted leave to amend because

24   amendment would be futile.

25   This Court also ORDERS Plaintiffs to consolidate amended complaints into one document for

26   Plaintiffs Arrieta, Vasquez, Melendez and S. and M. Quair. If any party believes that a Defendant or

1    Plaintiff in these cases would be prejudiced by such consolidation, this party is ORDERED TO SHOW

2    CAUSE IN WRITING within fourteen days of this order.

3         Counsel for Plaintiffs are cautioned that this will be the last opportunity to amend. This court

4    does not have the resources to review and write extensive orders on how to write, rewrite and submit

5    pleadings. This order gives the proper direction for the last time.

6    **SO ORDERED**
     **Dated: June 18, 2014**

7                                                        **/s/ Lawrence J. O'Neill**
                                                    **United States District Judge**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26