1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **EASTERN DISTRICT OF CALIFORNIA**
10

11   FRANCISCO ARRIETA, et al.,              ) Case No.: 1:14-cv-00400 – LJO JLT
                                              )
12              Plaintiffs,                   ) ORDER DENYING PLAINTIFFS' MOTION TO
                                              ) MODIFY THE SCHEDULING ORDER
13        v.                                  ) (Doc. 44)
                                              )
14   COUNTY OF KERN, et al.,                  )
                                              )
15              Defendants.                   )
                                              )
16   ─────────────────────────────)
                                              )
17   AND RELATED CONSOLIDATED CASES )
18   ─────────────────────────────)

19          Plaintiffs seek leave to amend the Court's scheduling order to file a Second Amended

20   Complaint in the action.  (Doc. 44.)  Defendants oppose modification of the Court's Order.  (Doc. 46.)

21   The Court found the motion suitable for decision without oral argument, and took the matter under

22   submission pursuant to Local Rule 230(g).  (Doc. 49.)  Because the Court finds Plaintiffs fail to

23   demonstrate good cause for amending the scheduling order, the motion to amend is **DENIED**.

24   **I.      Background**

25          Plaintiffs initiated this action by filing a complaint on March 21, 2014.  (Doc. 1.)  Plaintiffs

26   allege they were at Kern Medical Center around midnight on May 7, 2013, "when they observed

27   unknown and unidentified Kern County Sheriff deputies hitting an unrelated third man with their batons

28   across the street."  (Doc. 32 at 7, ¶ 16.)  Plaintiffs Francisco Arrieta and Maria Melendez "used their

                                              1

cell phones to record the acts of the deputies." (*Id.*, ¶ 17.)  Plaintiffs allege that approximately two hours later, "Defendants Kern County Sheriff's Department Deputy Enrique Bravo and Kern County Sheriff's Department Detective Rutledge, and Does 1 through 50" went to the apartment of Melissa Quair, demanded to enter and forced their way into the apartment, and "demanded Plaintiff Francisco Arrieta's cell phone that he used to record the violent encounter." (*Id.* at 7-8, ¶¶ 17, 21.)  Mr. Arrieta resisted turning over the phone because it contained "intimate and personal information," but offered to allow Defendants to "make a copy of the video encounter on his phone as long as it was done at that moment in his presence." (*Id.* at 8, ¶ 23.)

According to Plaintiffs, the deputies refused to leave "until they got the cell phone," and refused to allow anyone else to leave, including Mr. Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair. (Doc. 32 at 9, ¶¶ 27-29.)  Plaintiffs allege the deputies were in the apartment for "a minimum of four hours," during which time they "would walk up to Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair and without Plaintiffs' consent push, shove, and/or elbow each of them back into their seats while yelling, and threatening Plaintiffs . . . to not move, not stand up, and keep sitting." (*Id.* at 11-12, ¶ 34, 36, 39.)  In addition, Plaintiffs allege the deputies went through the personal belongings of Ms. Quair, "including but not limited to her purse, drawers, and/or bedroom." (*Id.* at 12, ¶ 37.)  Plaintiffs allege that ultimately, the deputies "unlawfully seized and left with Plaintiff Francisco Arrietta's cell phone." (*Id.* at 12-13 ¶ 39.)

Further, Plaintiffs allege that Maria Melendez and T.A.  came to the apartment later in the morning, where they were "immediately confronted" by the deputies, who ordered Ms. Melendez  "to turn [over] the cell phone she used to record the prior night's beating of Mr. Silva by the Kern County Sheriff's deputies." (Doc. 32 at 13, ¶ 40-41.)  Ms. Melendez refused, "stating she did not want to turn her cell phone over because her cell phone has all of her personal contacts, pictures, text messages, and videos," and expressed concern that the video would get erased and/or destroyed." (*Id.* at 13-14, ¶ 43.)  Plaintiffs allege that during this encounter, Plaintiffs Sulina Quair and Laura Vasquez arrived and walked toward the apartment. (*Id.* at 14, ¶ 44.)  However, the deputies ordered them "to 'stop and not move.'" (*Id.*)  Further, Plaintiffs assert the deputies would not permit anyone to leave the apartment "for a minimum of two hours." (*Id.* at 14-16, ¶¶ 45, 49.)  Plaintiffs allege the deputies "finally obtained

a search warrant and left with Plaintiff Maria Melendez' cell phone." (*Id.* at 17, ¶ 52.)

Plaintiffs assert that Mr. Arrieta and Ms. Melendez received their phones "more than a week later." (Doc. 32 at 17-18, ¶¶56-57.) Mr. Arrieta reports that when the phone was returned, "all of his pictures, contacts, and some of the video depicting the beating of Mr. Silva was erased." (Doc. 32 at 18, ¶ 56.) Similarly, Ms. Melendez asserts that "all of her pictures, contacts, and all of the video depicting the beating of Mr. Silva was erased." (*Id.*, ¶ 57.)

Based upon the foregoing facts, Plaintiffs assert the defendants are liable for violations of their civil rights arising under both the Constitution of the United States and California law, false arrest and/or imprisonment, assault, battery, intentional infliction of emotional distress, general negligence, conversion, civil conspiracy, and invasion of privacy. (*See generally* Doc. 32.) Defendants filed their answer to the First Amended Complaint on August 18, 2014. (Doc. 36.)

The Court held a scheduling conference with the parties on August 27, 2014. (Doc. 39.) The Court ordered the parties to make initial disclosures no later than September 12, 2014. (*Id.* at 1.) In addition, "[a]ny requested pleading amendments [were] ordered to be filed, either through a stipulation or motion to amend, no later than November 24, 2014." (*Id.* at 9, emphasis omitted.)

Plaintiffs filed the motion now pending before the Court, seeking leave to amend the scheduling order to permit the filing of an amended complaint, on March 5, 2015. (Doc. 44.) Defendants filed their opposition on March 19, 2015 (Doc. 46), to which Plaintiffs filed a reply on March 30, 2015. (Doc. 48.)

## II.     Legal Standards

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." *Id.* Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)).   Good cause must be shown for modification of the scheduling order.  Fed. R. Civ. P. 16(b)(4).  The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted).  Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).  The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### III.   Discussion and Analysis

The scheduling order set forth a pleading amendment deadline of November 24, 2014. (Doc. 39 at 1, 2.)  The current motion was not filed until March 5, 2015.  (Doc. 44.)  Thus, Plaintiffs are required to demonstrate good cause under Rule 16 for filing an amended pleading out-of-time.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (explaining the question of whether the liberal amendment standard of Rule 15(a) or the good cause standard of Rule 16(b) applies to a motion for leave to amend a complaint depends on whether a deadline set in a Rule 16(b) scheduling order has expired).

Plaintiffs assert "good cause exists to modify the scheduling order because Plaintiffs' basis for modification is to 'doe' in four defendants, Does 1 and 2 and Does 51 and 52." (Doc. 44 at 5.)

According to Plaintiffs, "it was known and expected by Defendants that Plaintiffs would request to amend their complaint to substitute the Does for the names of the Defendants because Plaintiffs stated this (without objection from Defendants) in the joint scheduling report." (*Id.* at 7.) Specifically, in the Joint Scheduling Report filed by the parties prior to the conference with the Court, Plaintiffs indicated they "reserve[d] the right to name the other 'Doe' defendants identified in their pleadings by their true names when such names are ascertained." (Doc. 37 at 6.) Plaintiffs note, "Defendants did not object to this reservation."[1] (Doc. 32 at 4.)

On the other hand, Defendants argue that Plaintiffs have failed to demonstrate good cause exists under Rule 16 for modification of the Court's scheduling order because they have not exhibited diligence in seeking amendment. (Doc. 46.) According to Defendants, "not only have the Plaintiffs known all they need to know to name the proper parties since the events in question; their attorneys produced the names of the persons they seek to add in response to discovery long before the date to seek amendment of the pleadings." (*Id.* at 2.) Defendants report the four individuals Plaintiffs seek to name "were disclosed as part of Defendants' initial disclosures on September 12, 2014." (*Id.*) Further, Defendants report that on January 30, 2015, Plaintiff's counsel "produced police reports in which all four of the proposed new defendants were not only identified, but whose roles in the events were described." (*Id.*, *citing* Herr Decl., Exh. 2.)

In response, Plaintiffs report that, although the officers were identified in their own initial disclosures as well as, Defendants' initial disclosures, Defendants "provided a long laundry list of various deputies involved during the May 8, 2013 [incident] without any specification as to who was present or not." (Doc. 48 at 4.) Plaintiffs assert, "It was not until Plaintiffs did their own investigation in which Plaintiffs' could identify the deputies that violated Plaintiffs' rights. . ." (*Id.*) According to Plaintiffs, "Upon discovering the true identities of these individuals, Plaintiffs contacted defense counsel in an attempt to meet and confer regarding a stipulation to Doe in the true identities," with the

---

[1] In this regard, Plaintiffs impliedly argue that the Court's order setting the pleading amendment deadline somehow excepted their "Doe Amendment" from compliance with the deadline; it did not. The order reads, "Any requested pleading amendments are ordered to be filed, either through a stipulation or motion to amend, no later than November 24, 2014." (Doc. 39 at 3) Moreover, the question under Rule 16 is not prejudice to Defendants; it is whether good cause has been shown.

initial contact being made on February 24, 2015. (*Id.*)

While Plaintiffs explain that they did not delay once they received confirmation that Defendants would not stipulate to the amendment, they do not explain the circumstances leading up to this.  For example, Plaintiffs don't explain when they learned the names of the deputies they seek to "Doe in." Notably, they do not dispute that they possessed the police reports which identified the parties they now wish to name and their roles in the underlying events prior to January 30, 2015.

Though Plaintiffs indicate they needed to conduct additional investigation to confirm the identities of the participating officers, why this was needed is not clear.  Perusal of the reports indicate that Brewer and Kimmel were clearly described as going to the apartment on Dunsmuir Court and speaking with Plaintiffs Sulina Quair (identified as Sulia Vasquez), Melissa Quair, Laura Vasquez and Francisco Arrieta.  (Doc. 46-2 at 12-13; Doc. 46-2 at 16-17)  Likewise, the reports indicate that Officer Swanson and Technical Investigator Slayton were involved in making copies of the flash drive—onto which the information from Plaintiffs' phones were copied—and that Swanson coordinated with the FBI related to the information from the phones.[2] (Doc. 46-2 at 18-19)

 Even though, Plaintiffs felt these police reports were insufficient to identify the law enforcement actors, Plaintiffs do not explain why they waited beyond the period authorized in the scheduling order to conduct discovery that would reveal the identities of the "Doe" defendants.  Likewise, the Court has been provided no explanation when Plaintiffs received the police reports such that it can evaluate whether the additional investigation was made timely.

Because of the lack of explanation related to Plaintiff's actions, the Court cannot find Plaintiffs acted diligently in seeking discovery or in seeking to file a second amended complaint, as is required by Rule 16 of the Federal Rules of Civil Procedure.  Thus, the Court declines to consider the Rule 15 factors.

///

---

[2] On a related note, the Eleventh Cause of Action asserts that Does 1 to 100 "improperly seized Plaintiff."  (Doc. 1 at 27)  Because the police reports indicate that neither Swanson nor Slayton had any contact with Plaintiffs, the Court presumes Plaintiff has a sufficient factual basis—consistent with counsel's obligation under Rule 11—to demonstrate that Swanson and Slayton would be properly named in the claim.  However, once again, there is no evidence set forth on this issue such that the Court could determine that the amendment is not futile.

**IV.      Conclusion and Order**

Plaintiffs fail to demonstrate good cause for modifying the scheduling order.  Accordingly, the Court exercises its discretion to deny Plaintiffs' request to amend the schedule for the purpose of filing an amended complaint.  *See Swanson*, 87 at 343; Fed. R. Civ. P. 15(a)(2).

Based upon the foregoing, **IT IS HEREBY ORDERED**:  Plaintiffs' motion for modification of the Court's scheduling order is **DENIED.**

IT IS SO ORDERED.

Dated:   **April 8, 2015**                                  _____**/s/ Jennifer L. Thurston**_
                                                                    UNITED STATES MAGISTRATE JUDGE