**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FRANCISCO ARRIETA, SULINA QUAIR, LAURA VASQUEZ, MELISSA QUAIR, and MARIA MELENDEZ,** | **1:15-cv-00706 LJO JLT** |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER TO CONSOLIDATE FOR ALL PRETRIAL PURPOSES** |
| **v.** | |
| **COUNTY OF KERN, DETECTIVE KIMMEL, DETECTIVE BREWER, SERGANT SMALLWOOD, and DOES 1 to 100, Inclusive,** | |
| **Defendants.** | |
| **FRANCISCO ARRIETA,** | **LEAD CASE: 1:14-cv-00400-LJO-JLT** **MEMBER CASES:** |
| **Plaintiff,** | |
| **v.** | **1:14-cv-00401-LJO-JLT** **1:14-cv-00402-LJO-JLT** **1:14-cv-00403-LJO-JLT** |
| **COUNTY OF KERN, DEPUTY ENRIQUE BRAVO, DETECTIVE RUTLEDGE, and DOES 1 to 100, Inclusive,** | **1:14-cv-00404-LJO-JLT** **1:14-cv-00717-LJO-JLT** |
| **Defendants.** | |

**I. INTRODUCTION**

Plaintiffs claim to have witnessed and/or videotaped a violent encounter on or about May 7, 2013 between unnamed Kern County Sheriff's Office (KCS) Deputies and a man unrelated to Plaintiffs. Plaintiffs claim to have been subjected to unlawful treatment when KCS Deputies attempted to retrieve the cellular telephones on which videos had been recorded.

## II. **FACTUAL BACKGROUND**

On May 7, 2013, Plaintiffs Maria Melendez, her daughters Sulina and Melissa Quair, and their friends Laura Vasquez and Francisco Arrieta were all at the Kern Medical Center in Kern County, CA. Compl., Doc. 2, ¶ 17. Around midnight Plaintiffs observed members of the Kern County Sheriff's Department beating an unrelated man. *Id.* Mr. Arrieta and Ms. Melendez recorded the incident using their cell phones. *Id.* at ¶¶ 18-19.

Around 12:15 am the next morning, Sulina Quair reported these activities to the Bakersfield Police Department. *Id.* at ¶ 20. Shortly thereafter, KCS Officer Sgt. Smallwood contacted Ms. Quair and instructed her not to disseminate the recordings to others or on social media. *Id.* Around 12:30 am, Sgt. Smallwood contacted Officers Kimmel and Brewer and ordered them to retrieve the cell phones with the footage on them. *Id.* at ¶ 21. Around 1:00 a.m., Kimmel, Brewer and a number of other KCS officers arrived at Melissa Quair's apartment, where she, Arrieta, Vasquez and Sulina Quair were present. *Id.* at ¶ 22. The officers demanded to enter and forced their way in the apartment. *Id.* at ¶ 23. The officers did not receive consent to enter the apartment and did not have a warrant. *Id.* at ¶¶ 24-25. Officers demanded that Arrieta give them his cell phone, but Arrieta refused. *Id.* at ¶¶ 26-27. Plaintiffs asked the officers to leave, but they refused to leave the apartment without Arrieta's phone. *Id.* at ¶ 32. Plaintiffs then attempted to leave the apartment, but officers would not let them. *Id.* at ¶¶ 34, 39. Plaintiffs allege that the officers "grew more and more upset," and threatened them saying, "We can do this the easy way or the hard way." *Id.* at ¶¶ 36-37. Plaintiffs allege that the officers would "push, shove, and/or elbow each of them back into their seats while yelling . . ." *Id.* at ¶ 38. The officers told Plaintiffs that if they posted the videos to the internet they would be taken to jail. *Id.* at ¶ 40. The officers searched Melissa Quair's personal belongings, including "her purse, drawers and/or bedroom." *Id.* at ¶ 42. Officers searched Arrieta's phone without permission, and obtained downloaded copies of the videos in question. *Id.* at ¶¶ 43-44. Officers told Arrieta that they had a "Judge order" to take the phone, but did not show Plaintiffs a copy. *Id.* at ¶ 44. Officers "threatened and/or insinuated" that they would arrest Arrieta if he

1    did not turn over the phone. *Id.* Eventually, Arrieta turned over his phone to the officers. *Id.* at ¶ 45. Mr.

2    Arrieta was able to obtain his phone a week later. *Id.* at ¶ 49. However, much of the personal

3    information contained on his phone was erased, including some of the videos of the night in question. *Id.*

4    at ¶ 49. Hereinafter, these events will be referred to as the "Early Morning Events."

5         Plaintiffs allege that Smallwood and other officers returned to Ms. Quair's apartment around 10

6    am on May 8, 2015 and demanded that Plaintiffs produce the other cell phone used to record the

7    previous night's encounter. *Id.* at ¶ 50. Smallwood would not let Melissa Quair leave the apartment, nor

8    would he allow her children to enter. *Id.* At some point, Smallwood seized Ms. Quair's phone. *Id.* About

9    three or four hours later, Plaintiffs were told that the officers had obtained a search warrant, but no

10   warrant was provided to them. *Id.* Hereinafter, these events shall be referred to as the "Late Morning

11   Events."

### III. PROCEDURAL HISTORY

13        This case is related to cases consolidated under lead case *Arrieta v. County of Kern*, 14-cv-

14   00400-LJO-JLT ("Early Cases"). In those cases, Plaintiffs filed complaints against the County and

15   unidentified KCS officers, alleging claims similar to those brought in the above-captioned case.

16   Defendant County of Kern moved to dismiss these cases. After consolidating the cases, the Court

17   granted Defendant's motions to dismiss in part, and allowed Plaintiffs leave to amend most of the

18   dismissed claims. *Id.* at Docs. 12 & 28. On May 12, 2014, minor T.A. filed a related case, through his

19   guardian ad litem. *T.A. v. County of Kern*, 1:14-cv-00717-LJO-JLT, Doc. 1. This case was consolidated

20   with the other five cases on May 21, 2014. Doc. 15.

21        Plaintiffs in the Early Cases filed a single amended complaint on July 15, 2014. First Am.

22   Compl. ("FAC"), Doc. 32. The FAC added Deputies Enrique Bravo and Rutledge as named Defendants.

23   *Id.* Defendants moved for summary judgment as to the named Defendants as to their involvement in the

24   Early Morning Events. *Id*. at Doc. 47. This motion was granted to both of them as to their liability for

25   state civil rights claims and as to Rutledge as to his liability for federal civil rights claims. *Id.* at Doc. 55.

1    On May 7, 2015, Plaintiffs filed the above-captioned case against Defendant KCS Officers

2  Smallwood, Kimmel, and Brewer, as well as new *Monell* claims against the County of Kern. Compl. ¶

3  21. On August 3, 2015, this Court granted Defendants' Motion to Dismiss, Doc. 12, in part, dismissing

4  *Monell* claims alleged against the County. Doc. 17. The Court also ordered the parties to show cause as

5  to why this case should not be consolidated with the Early Cases, in light of the substantial overlap

6  between them. *Id.* Defendants timely filed a response, in which they argued against consolidation. Mem.

7  in Opp'n to Consolidation ("Opposition"), Doc. 18. Plaintiffs also filed a response stating they did not

8  oppose consolidation. Pls.' Resp. / Non-Opp'n to Order to Show Cause, ("Response"), Doc. 20.

9                                **IV. STANDARD OF DECISION**

10    Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, "[i]f actions before the court

11  involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at

12  issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or

13  delay." In exercising this discretion, the Court "weights the saving of time and effort consolidation

14  would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United*

15  *States*, 743 F.2d 703, 704 (9th Cir. 1984). Consolidation may occur upon motion or sua sponte. *In re*

16  *Adams Apple, Inc*., 829 F.2d 1484, 1487 (9th Cir. 1987).

17                                        **V. ANALYSIS**

18    Defendants argue against consolidation as follows. First, Defendants argue that these cases

19  should not be consolidated because they are at different stages of trial preparation. Opposition at 3.

20  Second, Defendants argue that consolidation is unfair to defendants named in the earlier case, who

21  expect to have their trial finished in May. *Id.* Finally, Defendants argue that consolidation will

22  undermine the "good work" of a previous order issued by the magistrate judge. *Id.* at 4. Plaintiffs do not

23  oppose consolidation and say that the new case will require only minimal discovery. Response at 2.

24    Defendants' first argument is that these cases are at different stages of trial preparation; with

25  expert discovery closing in the Early Cases, and the scheduling conference still pending in this one.

1   Opposition at 3. Plaintiffs state, however, that only a limited amount of discovery is needed (i.e.

2   depositions of the newly identified Defendants). Response at 2. Defendants contend that they may need

3   to recall some witnesses from the Early Cases for depositions as well. Opposition at 5. This amount of

4   work does not seem excessive and seems to be within the capabilities of the parties and the magistrate

5   judge to schedule.

6   Defendants also argue that the cases involve different facts. They argue that the named

7   Defendants in the Early Cases are alleged to be responsible for the Early Morning Activities, while the

8   named Defendants in the instant case are alleged to be responsible for the events that occurred later that

9   morning. Plaintiffs, however, alleged that the named defendants in the Early Cases, Deputies Enrique

10  Bravo and Brandon Rutledge were present at *both* the Early and Late Morning events. Early Cases FAC

11  ¶¶ 21, 40, 41.[1] Plaintiffs also allege that the named defendants in the instant case, Officers Smallwood,

12  Kimmel and Brewer were involved with the Early Morning Events, and that Smallwood was present at

13  the Late Morning Event. Compl. ¶¶ 23, 50. That the overlap between the cases is enough such that

14  Defense Counsel cannot distinguish between them is reason enough for pretrial consolidation.

15  Defendants argue that pretrial consolidation would be unfair to Officers Rutledge and Bravo

16  because their trial will be delayed. They stop short, however, of claiming that such a delay would be

17  prejudicial. While delay is a serious consideration, the Court finds that such a delay is outweighed by

18  interests of justice and economy. As Defense counsel has made clear, the factual overlap between these

19  cases is significant; and the factual issues established in the Early Cases may reasonably be expected to

20  affect the instant case, and vice versa. Judicial and party economics also strongly favor pretrial

21  consolidation because it will streamline discovery.

22  The current cases are consolidated for pre-trial purposes only at this point and the reasons for

23

24

---

[1] The Court Granted Defendants' Motion for Summary Judgment as to Defendant Rutledge, Doc. 55. However, Defendants
25  only sought summary judgment as to the Early Morning Events. Doc 47-1. Therefore, he remains a Defendant in the case
with respect to his alleged involvement with the Late Morning activities.

5

1  pre-trial consolidation do not necessarily suggest that the trials should be consolidated as well. [2]

2  However, pre-trial consolidation is necessary to allow for the possibility of trial consolidation.

3  Finally, Defendants argue that this order will "work violence" on an earlier order issued by Judge

4  Thurston. Opposition at 4. This is without merit. The order in question, Doc. 50, addressed a distinct

5  issue- whether Plaintiffs showed good cause to receive leave to amend their filings and modify the

6  scheduling order. Judge Thurston agreed with Defendants that they did not. That this had the practical

7  effect of causing Plaintiffs to file a separate action is something Defendants should have raised when

8  they opposed Plaintiffs' motion. Now that this additional, but closely related case has been filed, the

9  issue has changed. It is no longer about whether Plaintiffs have shown good cause, but about the most

10  appropriate way to manage the docket. The Court finds consolidation to be the answer.

11  ## VI. CONCLUSION AND ORDER

12  For the reasons discussed above, the Court finds that consolidation for pretrial purposes will aid

13  both judicial and party efficiency and that consolidation will not cause undue delay, confusion, or

14  prejudice. Accordingly, the Clerk of Court is directed to consolidate this case with *Arrieta v. County of*

15  *Kern*, 1:14-cv-00400-LJO-JLT.

16  Until further notice, the parties and the Clerk of Court are to file all documents under only the

17  lead case number. Future captions should indicate the lead case number followed by the remaining

18  "member case numbers" as follows:

19  **Lead Case:**          **1:14-cv-00400-LJO-JLT**
    **Member Cases:**    **1:14-cv-00401-LJO-JLT**

20                                  **1:14-cv-00402-LJO-JLT**
                                  **1:14-cv-00403-LJO-JLT**

21                                  **1:14-cv-00404-LJO-JLT**
                                  **1:14-cv-00717-LJO-JLT**

22                                  **1:15-cv-00706-LJO-JLT**

23  The Court will reiterate its previous order that within ten (10) days after the dispositive motions

24  _____

25  [2] In a previous order, this Court ordered parties to file a joint status report addressing whether consolidation should be extended to trial after the dispositive motion deadline. 14-cv-400, Doc. 15.

1  deadline has passed and/or all dispositive motions have been ruled upon, whichever is later, the parties

2  shall file a joint status report addressing whether or not consolidation should be extended to include trial.

3  Only then shall this Court consider that issue.

4

5  IT IS SO ORDERED.

6      Dated:   **August 21, 2015**          **/s/ Lawrence J. O'Neill**
                                                  UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25