1  Leonard C. Herr, #081896
   Ron Statler, #234177
2  HERR PEDERSEN & BERGLUND LLP
   Attorneys at Law
3  100 Willow Plaza, Suite 300
   Visalia, California  93291
4  Telephone:  (559) 636-0200
   Fax: (559) 636-9759
5

6  Theresa A. Goldner, County Counsel
   Andrew Thomson, Chief Deputy
7  OFFICE OF THE COUNTY COUNSEL
   COUNTY OF KERN
8  1115 Truxtun Avenue, Fourth Floor
   Bakersfield, California 93301
9  Telephone: (661) 868-3800
   Fax: (661) 868-3805
10

11  Attorneys for Defendant COUNTY OF KERN, DETECTIVE KAVIN BREWER,
        DETECTIVE KEVIN KIMMEL, AND SERGEANT BILL SMALLWOOD

12                    **UNITED STATES DISTRICT COURT**

13                  **EASTERN DISTRICT OF CALIFORNIA**

14

15  FRANCISCO ARRIETA,                  CASE NO.        1:15-cv-00706-LJO-JLT

16         Plaintiff,                   LEAD CASE NO.: 1:14-cv-00400-LJO-JLT
                                        Member Cases:  1:14-cv-00401-LJO-JLT
17      v.                                             1:14-cv-00402-LJO-JLT
                                                       1:14-cv-00403-LJO-JLT
18  COUNTY OF KERN, DEPUTY                             1:14-cv-00404-LJO-JLT
    ENRIQUE BRAVO, DETECTIVE                           1:14-cv-00717-LJO-JLT
19  BRANDON RUTLEDGE and DOES 1
    to 100, Inclusive,
20                                      **DECLARATION OF LEONARD C. HERR**
         Defendants.                    **IN SUPPORT OF DEFENDANTS**
21                                      **BREWER, KIMMEL, SMALLWOOD AND**
                                        **COUNTY'S MOTION FOR SUMMARY**
22  AND RELATED CONSOLIDATED            **JUDGMENT (FRCP RULE 56)**
    CASES
23                                      Date:        January 19, 2016
                                        Time:        8:30 a.m.
24                                      Courtroom:   4

25

26                                      Trial Date:   May 24, 2016

27      I, Leonard C. Herr, declare:

28      1.  I am not a party to this action.

LAW OFFICES
HERR PEDERSEN &
BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-1-

2.      I am an attorney in the law firm Herr Pedersen & Berglund, LLP, attorneys of record for the defendants in this matter.  The statements made in this declaration are true of my own knowledge; if called upon as a witness, I could and would competently testify to them.

3.      Attached hereto as Exhibit A are the relevant portions of the certified transcript of a recording of statements made during the second meeting during which Sgt. Smallwood was at Melissa Quair's apartment on May 8, 2013, including the title page, the certification page signed by Naomi S. Alvarez on September 8, 2015, and the pages recording those statements made from just before Sgt. Smallwood entered the apartment, beginning from page 75, until the end of the transcript, which is page 82.

3.      Attached hereto as Exhibit B is the relevant portions of the certified transcript of the deposition of Francisco Arrieta, including the title page, the certification page signed by Jennifer Pryor on February 26, 2015, and the cited pages.

4.      Attached hereto as Exhibit C is the search warrant for the property of Francisco Arrieta and Maria Melendez that was seized, that being their cell phones, issued on May 8, 2013 and returned on May 23, 2013.  These are Bates Stamped COK 00001 – 00006.

5.      Attached hereto as Exhibit D is the Complaint in this matter, appearing on the Court's Docket as document number 2, provided here for the Court's convenience.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 1st day of December, 2015, at Visalia, California.


/s/ Leonard C. Herr
Leonard C. Herr

F:\Client Files\County of Kern 1534.00\1534.03 - Arrieta II\Motions\MSJ\Declaration of LCH.doc

LAW OFFICES
HERR PEDERSEN &
BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

**DECLARATION OF LEONARD C. HERR IN SUPPORT OF DEFENDANTS BREWER, KIMMEL, SMALLWOOD AND COUNTY'S MOTION FOR SUMMARY JUDGMENT (FRCP RULE 56)**

Exhibit "A"

Case 1:14-cv-00400-LJO-JLT   Document 59-3   Filed 12/01/15   Page 4 of 57

8/18/2015                 ARRIETA vs. COUNTY OF KERN        Transcripts of Interview 3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

_____

FRANCISCO ARRIETA, et al.,              No. 1:14-CV-00400

                      Plaintiffs,

vs.

COUNTY OF KERN, et al.,

                      Defendants.
_____

TRANSCRIPTION OF

TRANSCRIPTS OF INTERVIEW 3

Transcribed by:

Naomi S. Álvarez, CSR #13007

Case 1:14-cv-00400-LJO-JLT   Document 59-3   Filed 12/01/15   Page 5 of 57

8/18/2015                    ARRIETA vs. COUNTY OF KERN        Transcripts of Interview 3

1    to jail and he died in jail -- oh, that's a lie.

2            MELISSA QUAIR:  That's what the news says.  I

3    don't know if that's a true fact.  But that's what the

4    news said.

5            MARIA MELENDEZ:  Well, that's --

6            MELISSA QUAIR:  And I was like --

7            MARIA MELENDEZ:  Well, whoever said it, I

8    don't care who said it --

9            MELISSA QUAIR:  On the video you can see that

10   he's --

11           MARIA MELENDEZ:  Uh-huh.  That man died there.

12   Right there.

13           MELISSA QUAIR:  He died right there on that

14   corner.  You can see it.  Like you can see them

15   doing --

16           MARIA MELENDEZ:  They didn't even take him to

17   jail.

18           Come in.

19           MELISSA QUAIR:  Come in.

20           DETECTIVE RUTLEDGE:  Hello, sir.

21           DETECTIVE BRAVO:  Hey, what's up, John.

22           JOHN TELLO:  What's going on?

23           DETECTIVE BRAVO:  How's it going?

24           JOHN TELLO:  All right.

25           DETECTIVE RUTLEDGE:  Hi.  How's it going?

1        JOHN TELLO:  Okay.  Can I talk to them alone?

2        DETECTIVE BRAVO:  Not yet.

3        JOHN TELLO:  Huh?

4        DETECTIVE BRAVO:  We're going to seize the

5   phone.  We have a search warrant for their house.

6        JOHN TELLO:  Can I see the search warrant?

7        DETECTIVE BRAVO:  It's coming.  You can talk

8   to them, John, if you want to take them somewhere else.

9   They are free to leave at any point.  They just can't

10  take their phone.

11       JOHN TELLO:  Yeah, can we go in the room?

12       MELISSA QUAIR:  Yeah.  We just -- do we leave

13  the phone here?

14       DETECTIVE BRAVO:  Yeah.  You got to leave the

15  phone.

16       DETECTIVE RUTLEDGE:  Yeah.  Just leave that,

17  please.  Thank you.

18       DETECTIVE BRAVO:  John.  We're only here for

19  the phone.  Nothing else.

20       MELISSA QUAIR:  Do you want both of us or just

21  one?

22       JOHN TELLO:  (Inaudible.)

23       MELISSA QUAIR:  Oh, okay.

24       DETECTIVE RUTLEDGE:  So had you ever met that

25  man before.

1          MELISSA QUAIR:  Yeah.  You know, he was an

2     attorney for my cousin.  I didn't ever talk to him.  I

3     just seen him before.

4          DETECTIVE RUTLEDGE:  Oh, okay.

5          MELISSA QUAIR:  Yeah.  My boyfriend was saying

6     they even put something in his mouth to make him shut

7     up.

8          DETECTIVE BRAVO:  Whose mouth?

9          MELISSA QUAIR:  The guy that died or whatever.

10         DETECTIVE BRAVO:  Like what?

11         MELISSA QUAIR:  I don't know.  He said it was

12    like a ball thing.

13         DETECTIVE BRAVO:  We use masks.  That way they

14    don't though up in our face.

15         MELISSA QUAIR:  Oh, okay.

16         DETECTIVE BRAVO:  Maybe that's what it was.

17         MELISSA QUAIR:  Because you can hear him,

18    like, gargling on the video.  You can hear him, like --

19    I don't know if it was his own blood or what, but you

20    can hear him go (Inaudible sound.) You know?

21         DETECTIVE BRAVO:  Uh-huh.

22         DETECTIVE RUTLEDGE:  Is 20 minutes up?  Can

23    you try 17 news?

24         MELISSA QUAIR:  I don't --

25         DETECTIVE BRAVO:  That is 17, isn't it?

1          DETECTIVE RUTLEDGE:  No.  That's --

2          DETECTIVE BRAVO:  Who's Kiyoshi?

3          DETECTIVE RUTLEDGE:  Kiyoshi is 17 news.

4          MELISSA QUAIR:  I don't know what it's on.

5          DETECTIVE RUTLEDGE:  I think she said it was

6     seven.

7          MELISSA QUAIR:  Yeah.  That's the one we were

8     on.

9          DETECTIVE RUTLEDGE:  Oh, okay.

10          MELISSA QUAIR:  Yeah.  Mine's static

11     definition.

12          DETECTIVE BRAVO:  Is this cable or is it a --

13          MELISSA QUAIR:  Yeah.  I don't know why my

14     cable is doing that.

15          DETECTIVE BRAVO:  (Inaudible.)

16          DETECTIVE RUTLEDGE:  (Inaudible.)  You see

17     him.  He's here.

18          DETECTIVE BRAVO:  Oh, good.  That's from the

19     orange grove, the one on Monday.

20          DETECTIVE RUTLEDGE:  Uh-huh.

21          MELISSA QUAIR:  Did you guys find out if it

22     was (Inaudible.)  Or no?

23          DETECTIVE BRAVO:  Which one?

24          MELISSA QUAIR:  The body that was found in the

25     orange grove.

1          DETECTIVE RUTLEDGE:  I didn't make it out to
2  that one.
3          DETECTIVE BRAVO:  A man.
4          MELISSA QUAIR:  Oh, it was?
5          DETECTIVE BRAVO:  You know anything about
6  that?  No?
7          MELISSA QUAIR:  No.  I was actually driving --
8  I bought an RV yesterday --
9          DETECTIVE BRAVO:  Oh, you did?
10          MELISSA QUAIR:  A kid was telling me about it.
11  The guy I was buying it from.
12          DETECTIVE BRAVO:  A travel trailer that you
13  bought or an actual RV?
14          MELISSA QUAIR:  Yeah.  It's a travel --
15          DETECTIVE BRAVO:  Oh, yeah?  How big?
16          MELISSA QUAIR:  It's an actual RV that you
17  can --
18          DETECTIVE BRAVO:  Oh, really?  How big?
19          MELISSA QUAIR:  It's pretty big.
20          DETECTIVE BRAVO:  Who's the judge?
21          DETECTIVE DORKIN:  Brehmer.
22          DETECTIVE BRAVO:  Oh, I got it right here
23  (Inaudible.)
24          MELISSA QUAIR:  Do you guys happen to have the
25  search warrant for my boyfriend's house?

Case 1:14-cv-00400-LJO-JLT   Document 59-3   Filed 12/01/15   Page 10 of 57

8/18/2015                    ARRIETA vs. COUNTY OF KERN        Transcripts of Interview 3

 1              DETECTIVE BRAVO:  It's all included in the

 2   search warrant here.

 3              MELISSA QUAIR:  So why did they take it

 4   yesterday if they didn't have a search warrant?

 5              DETECTIVE BRAVO:  Well, first he gave it to us

 6   voluntarily and then when we realized that it was --

 7              MELISSA QUAIR:  Not true.

 8              DETECTIVE BRAVO:  Well, I mean, you guys can

 9   go to court and say, hey, they didn't take it

10   voluntarily.  You guys could ask the judge to give it

11   back to you guys.

12              DETECTIVE DORKIN:  Who's seizing it?

13              DETECTIVE BRAVO:  Yeah.  That's fine.  Put me

14   down.

15              MELISSA QUAIR:  Yeah.  Well, that officer was

16   like -- and then, like, five sheriffs showed up here

17   and start putting on their gloves and are like, don't

18   make us do this the hard way.  We're like, we're going

19   to give you the phone.  But, you know, really, does it

20   have to take all this?

21              DETECTIVE BRAVO:  Well, sometimes it does.

22   People don't want to relinquish their cell phones.

23   Unfortunately, we do have to take it.  It's evidence.

24              DETECTIVE DORKIN:  Only this cell phone right

25   here.

Case 1:14-cv-00400-LJO-JLT   Document 59-3   Filed 12/01/15   Page 11 of 57

8/18/2015                    ARRIETA vs. COUNTY OF KERN        Transcripts of Interview 3

1          DETECTIVE BRAVO:  What's that now?

2          DETECTIVE DORKIN:  The cell phone right here

3   and that's it?

4          DETECTIVE BRAVO:  Yeah.

5          DETECTIVE DORKIN:  Just this cell phone.

6          DETECTIVE BRAVO:  That's it.  Just her cell

7   phone.

8          DETECTIVE DORKIN:  Hi, ma'am.  I'm detective

9   Dorkin with the sheriff's office.

10          DETECTIVE BRAVO:  It's for her mom.

11          MELISSA QUAIR:  It's for my mom.

12          DETECTIVE BRAVO:  I don't -- yeah.

13          MELISSA QUAIR:  She's in the (Inaudible.)

14          DETECTIVE DORKIN:  Oh, she is?

15          DETECTIVE BRAVO:  You know what?  If you can

16   leave it here.  We got what we need.

17          DETECTIVE DORKIN:  Yeah.

18          DETECTIVE RUTLEDGE:  We're going to give you a

19   receipt for taking the item and a copy.

20          MELISSA QUAIR:  Oh, okay.

21          SERGEANT SMALLWOOD:  Mr. Tello, we're leaving.

22          DETECTIVE DORKIN:  (Inaudible.)

23          JOHN TELLO:  You have the search warrant.

24          DETECTIVE BRAVO:  Yeah, we're giving her a

25   copy.

1           MELISSA QUAIR:  She's going to get the phone

2      back the way that she gave it to you guys, though,

3      right?

4           DETECTIVE BRAVO:  Yeah.  We're not going to

5      delete anything.

6           DETECTIVE RUTLEDGE:  Yeah.  Nothing will be

7      removed from it.

8           DETECTIVE DORKIN:  You know, it's nothing

9      different than the store survey lens capturing

10     something.  Cameras on a building, we still would get a

11     search warrant.  It's really nothing different.  So

12     there's a copy of the search warrant.

13          DETECTIVE BRAVO:  Thanks for your cooperation.

14          MELISSA QUAIR:  All right.

15          DETECTIVE RUTLEDGE:  Maria, thank you.

16          DETECTIVE BRAVO:  Very nice to meet you,

17     Melissa.  Hope to see you over there.

18          MELISSA QUAIR:  Bye.

19          DETECTIVE RUTLEDGE:  I'm glad you're driving.

20          DETECTIVE BRAVO:  The time is now 1206 hours.

21          (Interview 3 was concluded.)

22                         _____

23

24

25

```
 1 │  STATE OF CALIFORNIA    )
                             )  ss.
 2 │  COUNTY OF KERN         )

 3 │

 4 │      I, Naomi S. Álvarez, a Certified Shorthand

 5 │  Reporter, in and for the State of California, holding

 6 │  Certificate No. 13007, do hereby certify:

 7 │          That the audiotape was transcribed by me into

 8 │  typewritten form to the best of my ability.

 9 │

10 │          IN WITNESS WHEREOF, I have subscribed my name

11 │  on _____, 2015.

12 │

13 │

14 │

15 │

16 │                    _____

17 │                    Naomi S. Álvarez, CSR #13007

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │
```

Exhibit "B"

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF CALIFORNIA

3                    _____

4

5    FRANCISCO ARRIETA, MARIA                Lead Case:
     MELENDEZ, SULINA QUAIR, LAURA     1:14-cv-00400-LJO-JLT
6    VASQUEZ, MELISSA QUAIR, and
     T.A., a minor by and through his
7    guardian ad litem, MARIA GUERRERO,

8                    Plaintiffs,

9    vs.

10   COUNTY OF KERN, DEPUTY ENRIQUE
     BRAVO, DETECTIVE RUTLEDGE, and
11   DOES 1 to 100, inclusive,

12                    Defendants.

13   _____

14

15              DEPOSITION OF FRANCISCO ARRIETA

16                    Taken at

17        Keleher's Certified Shorthand Reporters
             3400 Unicorn Road, Suite 101
18               Bakersfield, California

19        Tuesday, February 17, 2015 at 10:00 a.m.

20

21   Reported by:  Jennifer Elaine Pryor, CSR #13559

22

23

24

25

1      A.   Yes.

2      Q.   And what was your attitude when you first

3  started dealing with Detective Kennel?

4      A.   Cooperative.

5      Q.   And you wanted to do everything you could to

6  help them with their investigation?

7      A.   Yes.

8      Q.   Okay.  What did the officer first say to you?

9      A.   They wanted to see the video.

10     Q.   Okay.  I assume the officer first identified

11  himself to you; correct?

12     A.   Yes.

13     Q.   Showed you his card and you were convinced in

14  your mind that this was a legitimate law enforcement

15  officer; correct?

16     A.   Yes.

17     Q.   And then he said words to the effect, "I would

18  like to see the video;" correct?

19     A.   Yes.

20     Q.   And you cooperated and showed him the video,

21  didn't you?

22     A.   Yes.

23     Q.   And what was his response after you showed him

24  the video?

25     A.   Their response was they needed to have the

2/17/2015
ARRIETA vs. COUNTY OF KERN
Francisco Arrieta

1    video.

2        Q.    Okay.  And you understood they needed the

3    video as part of their criminal investigation; correct?

4        A.    Yes.

5        Q.    So you offered to let them copy the video;

6    correct?

7        A.    Yes.

8        Q.    And what did they say when you offered to let

9    them copy it?

10       A.    They said it was okay.

11       Q.    Okay.  Did they copy it?

12       A.    They tried.

13       Q.    Were they able to?

14       A.    No.

15       Q.    Okay.  So they said something to indicate to

16   you that they were not successful in copying it;

17   correct?

18       A.    Yes.

19       Q.    And then what did they do?

20       A.    They made a few phone calls and came to the

21   conclusion that a tech would show up to copy the video.

22       Q.    Okay.  When you say a tech, you understood it

23   was some technically experienced person was going to

24   come up and try to copy it?

25       A.    Yes.

1              MS. TRUJILLO:  Objection.  Argumentative.  And

2      it's vague.

3         A.      They said that they could not leave without my

4      phone.

5         Q.      (By MR. HERR)  Okay.  They weren't going to

6      let you take the phone someplace else; correct?

7         A.      Yes.

8              MS. TRUJILLO:  Objection.  Misstates his

9      testimony.

10        Q.      (By MR. HERR)  So you understood that the

11     phone had to stay there; correct?

12             MS. TRUJILLO:  Objection.  Misstates his

13     testimony.

14        A.      I'm not really understanding.

15        Q.      (By MR. HERR)  Sure.

16             As you understood it from this conversation

17     you had with this law enforcement officer, they felt

18     there was a need to get a copy of this video that was

19     on the phone; correct?

20        A.      Yes.

21        Q.      And you agreed with them that they could get a

22     copy of the video that was on the phone; correct?

23        A.      Yes.

24        Q.      And did anybody tell you that you could not

25     leave the apartment?

1    residence.

2         Q.    (By MR. HERR)  Did you leave the residence?

3         A.    Eventually, at 5:30 in the morning.  5:00 or

4    whatever time it was when I left.

5         Q.    Okay.  So you were permitted to leave the

6    residence; correct?

7         A.    Yes.  I was permitted to leave the residence

8    after they forced me to leave my phone.

9         Q.    Okay.  So you left the residence with the

10   permission of the law enforcement officers; correct?

11            MS. TRUJILLO:  Objection.  Misstates his

12   testimony.

13        A.    I left the residence after I was forced to

14   leave my phone.

15        Q.    (By MR. HERR)  Sure.  You left with their

16   permission; correct?

17            MS. TRUJILLO:  Objection.  Misstates his

18   testimony.  Assumes facts not in evidence.

19        Q.    (By MR. HERR)  Did you sneak out?

20        A.    No.  I walked out the door.

21        Q.    Okay.  And as far as you know, they saw you

22   leave; correct?

23        A.    Yes.

24        Q.    And they, as far as you know, were aware you

25   left; correct?

1      A.   Yes.

2      Q.   So as far as you know, you left with their

3   permission; correct?

4      A.   I guess you can assume that.

5      Q.   They didn't try to stop you, did they?

6      A.   Not the last time.  No.

7      Q.   Okay.  So you turned the phone over to them

8   and you were permitted to leave; correct?

9      A.   Yes.

10      Q.   During the period of time that you were at the

11   apartment with the law enforcement officers, were you

12   ever handcuffed?

13      A.   No.

14      Q.   Did they ever touch you?

15      A.   Yes.

16      Q.   How did they touch you?

17      A.   I was shoved back and said that I was not

18   leaving.

19      Q.   Who shoved you?

20      A.   I believe it was Detective Kennel.

21      Q.   And when Detective Kennel shoved you, describe

22   exactly what he did.

23      A.   He put his hand on my left shoulder, shoved me

24   back and said I was not leaving.

25      Q.   Okay.  Was he facing you?

1    Q.    What's the basis of that understanding?

2    A.    It's just my understanding, what I was told.

3    Q.    By who?

4    A.    I don't recall who told me that.

5    Q.    Is that from watching TV?

6    A.    Probably.

7    Q.    Okay.   Nobody in law enforcement ever told you

8    that, did they?

9    A.    No.

10    Q.    Okay.   So the only time any law enforcement

11    officer touched you was when Detective Kennel pushed

12    your left shoulder; correct?

13    A.    Yes.

14    Q.    Okay.   Did that hurt you?

15    A.    Not physically, no.

16    Q.    It was more of an emotional harm that you

17    suffered; is that correct?

18    A.    Yes.

19    Q.    Have you gotten over it?

20    A.    No.

21    Q.    You are still suffering emotional harm because

22    he pushed your shoulder?

23    A.    I lost trust in law enforcement.

24    Q.    What does that mean?

25    A.    I just -- I had just watched them beat

1          REPORTER'S CERTIFICATION

2

3          I, Jennifer Elaine Pryor, a Certified

4     Shorthand Reporter in and for the State of California,

5     holding Certificate No. 13559, do hereby certify:

6

7          That the foregoing witness was by me duly

8     sworn; that the deposition was then taken before me at

9     the time and place herein set forth; that the testimony

10    and proceedings were reported stenographically by me

11    and later transcribed into typewritten form under my

12    direction; that the foregoing is a true record of the

13    testimony and proceedings taken at that time.

14

15         IN WITNESS WHEREOF, I have subscribed my name

16    on _____, 2015.

17

18

19                         _____

20                         Jennifer Elaine Pryor, CSR #13559

21

22

23

24

25

Exhibit "C"

# STATE of CALIFORNIA - COUNTY of KERN
# RETURN TO SEARCH WARRANT

**Senior Deputy Michael Dorkin**, being sworn, says that he/she conducted a search pursuant to the Search Warrant described below:

Issuing Magistrate' Judge Brehmer

Magistrate's Court: **Superior Court of California, County of Kern, Bakersfield Branch**

Date of Issuance: May 8th[th], 2013                     Date of Service: May 8th, 2013

and searched the following **location(s and property:**

**Location:** 5401 Dunsmuir Street, Apartment # 29, Bakersfield CA 93309.

**Property:** AT&T, Samsung, Galaxy Note, black cellular phone belonging to Francisco Arrieta (661-578-7451).
<u>Arrietta's phone was already in KCSO Detective's custody prior to this search warrant being signed.</u>
Samsung, Metro PCS, black cellular phone belonging to Maria Melendez (661-346-2673).

**And seized the items,**

AT&T, Samsung, Galaxy Note, black cellular phone belonging to Francisco Arrieta (661-578-7451).
Samsung, Metro PCS, black cellular phone belonging to Maria Melendez (661-346-2673). <u>Melendez's cellular phone was the only item seized at 5401 Dunsmuir Street, Apartment # 29.</u>

One DVD containing computer forensic report for each phone.
One DVD containing the cellular phone file system forensic report for each phone.

**Both cellular phones were returned to the owners.**

I further swear that this is a true and detailed account of all the property taken by me pursuant to the search warrant, and the pursuant to Penal Code Sections 1528 and 1536 this property will be retained in my custody, subject to the order of this court or of any other court in which the offense in respect to which the seized property is triable.

Any item seized during the lawful service of the search warrant shall be disposed of in accordance with the law by the Kern County Sheriff's Office upon adjudication of the case. The officers serving this warrant are hereby authorized, without necessity of further court order, to return seized items to any known victim(s) if such items have been photographically documented.

_____
(Signature of Affiant)

                                          23
Sworn to and Subscribed before me on this 22nd day of May, 2013, at __8:32__ (A.M.) P.M.

_____
(Signature of Magistrate)

Judge of the **Superior Court of California, County of Kern**

**CHARLES R. BREHMER**

_____
(Magistrate's Printed Name)

COK 00001

# STATE of CALIFORNIA, COUNTY of KERN
# SEARCH WARRANT and AFFIDAVIT
## (AFFIDAVIT)

**Detective Michael Dorkin**, with the **Kern County Sheriff's Office**, swears under oath that the facts expressed by him/her in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he/she has probable cause to believe and does believe that the articles, property, and persons described below are lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below, and are now located at the locations set forth below.  Wherefore, Affiant requests that this Search Warrant be issued.

_(signature)_

_____, NIGHT SEARCH REQUESTED: ☐ YES x NO
(Signature of Affiant)

# (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF KERN:** proof by affidavit, having been this day made before me by **Peace Officer Detective Michael Dorkin** that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by "☐"(s), in that:

☐ property was stolen or embezzled;

☐ property or things were used as the means of committing a felony;

☐ property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their being discovered;

☒ property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony;

You are Therefore COMMANDED to SEARCH:

The FOLLOWING RESIDENCE:

5401 Dunsmuir Street, apartment # 29, Bakersfield CA 93309. The residence is described as a two story, single family apartment. The apartment is tan in color, with stucco siding. The trim is brown in color with brown roof. The front door faces south and is brown in color with a black security door. The numbers "5401" appear on the west side of the front door. The numbers "29" appear in gold, above the south west window.

The FOLLOWING PERSON:

Maria Elena Melendez, Hispanic Female, 5'3", 190 pounds, DOB 6-22-1960, N7109092

For the FOLLOWING PROPERTY

AT&T Samsung, Galaxy Note, black cellular phone belonging to Francisco Arrietta (10-4-1982), phone number 661-578-7451. This phone is in KCSO custody at this time.

Samsung Metro PCS, black in color Cellular phone belonging to Maria Melendez. Phone number 661-346-2673. Detectives are currently with Melendez at the above residence.

Investigating officer is authorized to seize all computers systems, computer programs. computer software and supporting documentation as defined by Penal Code section 502 subdivision (b) including any computer supporting hardware, software, or documentation that is necessary to use the system or is necessary to recover digital evidence from the system and any associated peripherals that are believed to contain any or all of the evidence described in the warrant, and to conduct an off-site search of the described items for the evidence described. The investigating officer and those agents acting under the direction of the investigating officer are authorized to access all computer data to determine if the data contains property, records or information as described above.

The investigating officer is authorized to employ the use of non-sworn experts of the Kern County Sheriff's Department Technical Investigations, Forensic Computer Unit, to access and preserve computer data. Any digital evidence found during the execution of this search warrant will be seized, transported from the scene, and analyzed in a reasonably prudent time. If no evidence of criminal activity is discovered relating to the seized computer systems and associated peripherals, the system will be returned promptly.

AND TO SEIZE IT / THEM IF FOUND and bring it / them forthwith before me, or this court, at the courthouse of this court. This Search Warrant and Affidavit and attached and incorporated **Statement of Probable Cause** were sworn to as true and subscribed before me on this **8** day of **May, 2013,** at **11:37** **A.M.** P.M. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____
(Signature of Magistrate)

NIGHT SEARCH APPROVED: ☐ YES ☒ NO

Judge of the Superior Court of California, County of Kern, **Metropolitan Division**

C R BREHMER
_____

(Printed name of Magistrate)

STATE of CALIFORNIA, COUNTY of KERN,
ATTACHED and INCORPORATED
# STATEMENT OF PROBABLE CAUSE

Affiant declares under penalty of perjury that the following facts are true and that there is probable cause to believe, and Affiant does believe, that the designated articles and property, are now in the described locations, of the vehicle and the cellular phones:

I have been a Deputy Sheriff for the Kern County Sheriff's Office for over 7 years and have acted and received information set forth on this affidavit in that capacity. Your affiant is presently a Senior Deputy assigned to the Detectives Division, Robbery/ Homicide Unit, for the Kern County Sheriff's Office. I completed the 40 hour Sexual Assault Investigation Training, 40 hour Buried Body Class, 80 hour DOJ Basic Narcotics School, 80 Special Weapons and Tactics School (SWAT) and completed numerous additional courses. I have participated in numerous investigations, including property crimes, child abuse, domestic violence, child abduction, sexual assault, robbery and homicides. I have an active case load, which includes robberies, assault with a deadly weapon cases, domestic violence and homicides. On a regular basis, I work with other officers regarding these types of cases. I rely on their expertise as a training aid to assist in my own investigations.

I have written several search warrants, including: computer, cellular phones, narcotics, weapons, stolen property, embezzlement search warrants and various court orders.

On May 7th, 2013 at about 1155 hours, Deputies were dispatched to a report of a male lying on the ground near the intersection of Flower Street and Pacific Street in Bakersfield CA. Deputy Kelley arrived at the scene at about 1159 hours and contacted an unidentified white male about 5'9" and 250 pounds.

The suspect immediately resisted arrest and did not comply with the orders of the deputies. The suspect actively resisted arrest and assaulted deputies. Use of force options were utilized for a several minute period. Control holds, baton strikes and a K-9 was deployed. All were ineffective in controlling the suspect. As additional Deputies and Officers with the California Highway Patrol arrived, the suspect was eventually handcuffed. The suspect continued to resist and kick deputies even though he was in handcuffs and lying on the ground. A hobble restraint was utilized to control the suspect's feet and stop him from continuing to kick Deputies.

The suspect continued to move his body in an attempt to resist after both handcuffs and a hobble restraint was placed on him. During the entire time the suspect fought, he yelled and screamed. Medical aid was immediately called to treat the suspect for any injuries and to transport to the hospital. Deputies monitored the suspect's vitals and was placed on his side. The suspect eventually stopped yelling and moving about. Deputies reported the suspects pulse began to get faint, then stopped.

Halls' Ambulance arrived about the time suspects pulse stopped. Hall's Ambulance paramedics began CPR at the scene. The hand cuffs were removed from the suspect so medical aid could be rendered. The suspect was transported to Kern Medical Center, where he was pronounced dead.

During the course of the investigation, it was learned Francisco Arrietta filmed the incident with his

Search Warrant.doc - revised 04-09-2006   MLV                    Search Warrant
Page 3 of 4                                        CR / DR #  .

COK00004

cellular phone. Deputies s____ed his cellular phone at the scen___. Detective Bravo contacted Maria Melendez at 5401 Dunsmuir St, Apartment # 29, Bakersfield CA 93309. It was learned Melendez also filmed the incident. Detective Bravo is present at with Melendez at her apartment and has custody of her cellular phone. I am seeking the search and processing of both cellular phones to review the videos and or photographs of the incident. The footage/ photos may show evidence of the suspect's felony resisting arrest and assault on peace officer's. This footage/ photos may also be used for evidentiary purposes in future court proceedings.

I request that a Search Warrant be issued based upon the aforementioned facts, for the seizure of said property, or any part thereof, good cause being shown thereof, and the same be brought before this Magistrate or retained subject to the order of the court, or of any court in which the offense(s) in respect to which the property of things taken, triable, pursuant to Section 1536 of the Penal Code,

I certify (declare) under penalty of perjury that the foregoing is true and correct.



**Kern County Sheriff's Office**
## General Investigations Division

| TITLE: Search Warrants | | | NO: A-500 |
|---|---|---|---|
| APPROVED: Commander Dan Leper | | | |
| EFFECTIVE: 5/15/08 | REVIEWED: 5/17/10 | REVISED: 5/15/08 | UPDATED: 5/15/08 |

## POLICY

Search Warrants are a valuable tool for investigators. Statutes and Case Laws have been established to govern the request, service and return of search warrants. It is the policy of the General Investigations Section to comply with all legal mandates pertaining to search warrants and execute the warrants in the safest manner possible for the community and officers involved. In order to assist in meeting this policy, the following guidelines and directives have been established for the General Investigations Section.

## DIRECTIVE A

All search warrants will be reviewed and approved by a Sergeant prior to being signed by a judge. In cases where entry of a residence or business resulting in the physical seizure of persons and property, the General Investigations Sergeant will be assigned to supervise the preplanning and will be present during the execution of a search warrant. This does not apply to "fax" warrants, are not intrusive and do not require a forced entry.

## GUIDELINE A

Generally, an operations plan will be developed for the execution of the search warrant and reviewed with the General Investigations Sergeant. The Division Commander will be notified of the warrant service. The assigned supervisor will be tasked with the coordination and direction of this plan.

## DIRECTIVE B

Any resources outside this division will be requested through a Sergeant. The Commander will be consulted for major resource requests by the Sergeant.

COK 00006

Exhibit "D"

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

FRANCISCO ARRIETA, ET AL. ,

V.

COUNTY OF KERN, ET AL. ,

**SUMMONS IN A CIVIL CASE**

CASE NO: 1:15−CV−00706−——JLT

TO:  Brewer, County of Kern, Kimmel, Smallwood
Defendant's Address:

**YOU ARE HEREBY SUMMONED** and required to serve on

Chantal Amber Trujillo
Rodriguez and Associates
2020 Eye Street
Bakersfield, CA 93301

Code No _____
BY ORDER OF THE BD/SUPV
Referred To _County Counsel_
_47 pages_
_Hand delivered on 6/2/15_
Copies Furnished _Risk Management_

Filed by BD Supv _6/2/15_
KATHLEEN KRAUSE
Clerk of the Board of Supervisors
By _Laura Belden_

an answer to the complaint which is served on you with this summons, within **21** days after
service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by
default will be taken against you for the relief demanded in the complaint.  Any answer that you serve
on the parties to this action must be filed with the Clerk of this Court within a reasonable period
of time after service.

MARIANNE MATHERLY
CLERK

/s/  T. Lundstrom

(By) DEPUTY CLERK

ISSUED ON 2015−05−08 10:43:36.0, Clerk
USDC EDCA

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me (1) | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

☐ Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify) : _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____

                    Date

*Signature of Server*

*Address of Server*

1 | DANIEL RODRIGUEZ, ESQ., SBN 096625
JOEL T. ANDREESEN, ESQ., SBN 152254
2 | CHANTAL TRUJILLO, ESQ., SBN 289493
3 | **RODRIGUEZ & ASSOCIATES**
**A PROFESSIONAL LAW CORPORATION**
4 | 2020 Eye Street
5 | Bakersfield, CA  93301
Tel. No.: (661) 323-1400
6 | Fax No.: (661) 323-0132
7 |
8 | Attorneys for Plaintiffs, FRANCISCO ARRIETA,
SULINA QUAIR, LAURA VASQUEZ,
9 | MELISSA QUAIR, and MARIA MELENDEZ
10 |
11 | UNITED STATES DISTRICT COURT
12 | EASTERN DISTRICT OF CALIFORNIA
13 |
14 | FRANCISCO ARRIETA, SULINA
15 | QUAIR, LAURA VASQUEZ, MELISSA
16 | QUAIR, and MARIA MELENDEZ
17 |
18 |     Plaintiffs,
19 |     vs.
20 | COUNTY OF KERN, DETECTIVE
21 | KIMMEL, DETECTIVE BREWER,
22 | SERGANT SMALLWOOD, and DOES 1
to 100, Inclusive
23 |
24 |     Defendants.

Case No.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

1

2

## COMPLAINT

3      Plaintiffs FRANCISCO ARRIETA, SULINA QUAIR, LAURA VASQUEZ, MARIA

4  MELENDEZ, and MELISSA QUAIR, allege in their Complaint against Defendants

5  COUNTY OF KERN, DETECTIVE KIMMEL, DETECTIVE BREWER, SERGANT

6  SMALLWOOD,  and DOES 1 to 100, Inclusive (collectively referred to as "Defendants"),

7  as follows:

8

9                 **JURISDICTION AND VENUE**

10

11      1.      This Complaint is asserted by FRANCISCO ARRIETA, SULINA QUAIR,

12  LAURA VASQUEZ, MELISSA QUAIR, and, MARIA MELENDEZ, ("Plaintiffs"), for

13  compensation, as follows:

14

15

16        (a) FIRST CAUSE OF ACTION: Violation of Plaintiffs' Rights Secured by the

17             Fourth and Fourteenth Amendments to be Secure in their Home, and to be

18             Free From the Use of Excessive Force and Unlawful Search, Seizure and/or

19             Arrest, Pursuant to 42 U.S.C. §§ 1983, 1988;

20

21        (b) SECOND CAUSE OF ACTION: Violation of Plaintiffs' Rights to be

22             Secure in their Person and Premises, and Free From Unlawful Seizure

23             and/or Arrest, and the Use of Excessive Force and, Pursuant to 42 U.S.C.

24             §§ 1983, 1988;

25

26

27

28

(c)   THIRD CAUSE OF ACTION: Violation of Plaintiffs' right to freedom of speech and press under the First Amendment and Fourteenth Amendment of the Constitution of the United States.

(d)   FOURTH CAUSE OF ACTION: Violation of Plaintiffs' Fourteenth Amendment to the Constitution of the United States to be free from the Deprivation of Property without Due Process.

(e)   FIFTH CAUSE OF ACTION: Invasion of Privacy under the Fourth Amendment to the Constitution of the United States.

This Court has jurisdiction over Plaintiffs' Federal Civil Rights claims under 42 U.S.C. §§ 1983, 1988 pursuant to 28 U.S.C. §§ 1331, 1343.

2.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because: (i) a substantial part of the events or omissions giving rise to the claim occurred in their judicial district; and (ii) Defendants reside within their judicial district.

## PARTIES AND OTHIS RELEVANT ACTORS

3.   This action is related to the prior action entitled <u>Francisco Arrieta, et al. v. County Of Kern, et al.</u>, United States District Court, Eastern District of California Case No.  1:14-cv-00400-LJO-JLT, in that it: (a) arises out of the same acts and occurrences as the Prior Action; and (b) Plaintiffs herein, are some of the plaintiffs in the Prior Action.

4.    Plaintiffs are, and at all times mentioned herein were, citizens and residents of the City of Bakersfield, Kern County, California.

5.    Defendant, Detective Kimmel, is, and at all times mentioned herein was, an employee of the Kern County Sherriff's Office. At all relevant times, Defendant Detective Kimmel was an authorized employee and agent of the County, subject to oversight and supervision by the County's elected and non-elected officials, and were acting under color of law within the course and scope of their duties as sheriff's deputies for the Kern County Sheriff's Department and with the complete authority and ratification of their principal, Defendant County.

6.    Defendant, Detective Brewer is, and at all times mentioned herein was, an employee of the Kern County Sherriff's Office. At all relevant times, Defendant Detective Brewer was an authorized employee and agent of the County, subject to oversight and supervision by the County's elected and non-elected officials, and were acting under color of law within the course and scope of their duties as sheriff's deputies for the Kern County Sheriff's Department and with the complete authority and ratification of their principal, Defendant County.

7.    Defendant, Sgt. Smallwood, is, and at all times mentioned herein was, an employee of the Kern County Sherriff's Office. At all relevant times, Defendant Detective Kimmel was an authorized employee and agent of the County, subject to oversight and supervision by the County's elected and non-elected officials, and were acting under color of law within the course and scope of their duties as sheriff's deputies for the Kern County Sheriff's Department and with the complete authority and ratification of their principal, Defendant County.

8.    Defendant COUNTY OF KERN is, and at all times mentioned herein was, a political subdivision of the State of California.

9.     Defendant COUNTY OF KERN maintains, operates and/or controls the Kern County Sheriff's Office, which is, and at all times mentioned herein was, a law enforcement agency organized and existing under the laws of the State of California.

10.     Defendant COUNTY OF KERN ("County") also proximately caused Plaintiffs' injuries and is liable under state law and under principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Defendant County is a chartered subdivision of the State of California with the capacity to sue and be sued. At all relevant times, Defendant County is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  Defendant County is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies. At all times relevant to the facts alleged herein, Defendant County was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California. At all relevant times, County was the employer of Defendants Kimmel, Brewer, Smallwood, and DOES 1 to 50, inclusive.

11.     Defendant DOES 1 to 50, inclusive, are, and at all times mentioned herein were, sheriff deputies, deputies, peace officers, police officers, officers, detectives, agents and/or employees of the Defendant County and Kern County Sheriff's Office, and were acting within the course and scope of said employment and under color of law.

12.     At all relevant times, each of Defendants Does 51-100, inclusive, was a sheriff's deputy and/ or managerial, supervisorial, and policymaking employee of the Kern County Sheriff's Department, who was acting under color of law within the course and scope of his duties as a sheriff's deputy and/ or managerial, supervisorial, and policymaking employee for the Kern County Sheriff's Department and with the complete authority and ratification of his principal, Defendant County.

13.    In doing the acts and failing and omitting to act as hereinafter described, Defendants Kimmel, Brewer, Smallwood, and Does 1-50, inclusive were acting on the implied and actual permission and consent of County.

14.    Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as Does 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will amend their Complaint to allege the true names and capacities when ascertained. Plaintiffs are informed and believe and on that basis allege that each of the fictitiously named Defendants are liable in the manner set forth below for the acts, conduct and/or omissions concerning the events and happenings herein referred to, which proximately caused the damages and injuries to Plaintiffs as alleged herein. Said fictitious, "Doe" Defendants are named pursuant to California Code of Civil Procedure § 474, California Government Code § 950.4, Federal Rule of Civil Procedure 15(c)(1), and the decisions in *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989) (citing *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1463 (9th Cir.1988)), and *Motley v. Parks*, 198 F.R.D. 532, 534-535 (C.D.Cal. 2000).

15.    Plaintiffs are informed and believe and on that basis allege that at all times and places mentioned herein, each Defendant was the agent, representative and/or employee of each of the remaining Defendants and was acting within the course and scope of said agency, representation and/or employment.

16.    In performing and engaging in the acts alleged herein, Defendants Kimmel, Brewer, and Smallwood were acting under color of law and as employees under the statutes of the State of California and the ordinances, regulations, customs, and practices of Defendant County and the Kern County Sheriff's Office.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17.     On or about May 7, 2013, at or near 11:30 p.m. Plaintiffs were at Kern Medical Center. Plaintiffs FRANCISCO ARRIETA, SULINA QUAIR, LAURA VASQUEZ, and MARIA MELENDEZ, were standing outside of Kern Medical Center when they observed unknown and unidentified Kern County Sherriff deputies hitting an unrelated third man with their batons across the street.

18.     During this violent encounter, Plaintiff FRANCISCO ARRIETA used his cell phone to record the acts of the deputies.

19.     During this violent encounter, Plaintiff MARIA MELENDEZ used her cell phone to record the acts of the deputies.

20.     Shortly after this deadly encounter, on May 8, 2013, Plaintiff Sulina Quair, at or about 12:15 a.m. called the Bakersfield Police Department to inform them of the events that were just witnessed and that they were video recorded. Shortly thereafter, Defendant Sgt. Smallwood from the Kern County Sherriff's Department contacted Sulina Quair and ordered that no one was to place any of the video recordings on any kind of social media or disseminate the recordings to anyone in any way or else she and the owners of the cell phone video recordings would go to jail.

21.     Shortly after this phone call, at or about 12:30 a.m. on May 8, 2013, Defendant Sgt. Smallwood contacted Defendants Kimmel and Brewer and ordered them to go to Plaintiffs' home and seize the cell phones knowing there was no probable cause or reasonable suspicion that Plaintiffs had committed a crime, and there was no search warrant.

22.     Shortly thereafter, at or about 1:00 a.m. on May 8, 2013, Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive showed up unannounced at the apartment of Plaintiff, Melissa Quair.

23.    At this time Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer, and Does 1 through 50, inclusive demanded to enter and forced their way into Plaintiff, Melissa Quair's apartment. Further unbeknownst to all Plaintiffs and without their consent, Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive were recording all conversations and/or discussions within Plaintiff Melissa Quair's apartment.

24.    Plaintiffs Francisco Arietta, Sulina Quair, Laura Vasquez, and Melissa Quair did not give permission for Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer to enter into Plaintiff Melissa Quair's apartment.

25.    Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive did not have a warrant to enter Plaintiff, Melissa Quair's apartment.

26.    Defendants Kimmel and Brewer and Does 1 through 50, inclusive forced their way into Plaintiff Melissa Quair's apartment. Upon entering, Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive demanded Plaintiff Francisco Arrietta's cell phone that he used to record the violent encounter of the deputies beating the unarmed man.

27.    Plaintiff Francisco Arrietta refused to allow Defendants Kern County Sheriffs Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive to take his phone because Defendants did not have a warrant. Furthermore, Plaintiff Arieta was afraid to turn his cell phone and its contents over to the same law enforcement agency that just beat and killed an unarmed man.

28.   Further, Plaintiff Francisco Arrieta told Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive that in the alternative they could make a copy of the video encounter on his phone as long as it was done at that moment in his presence.

29.   When Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive refused to make a copy, Plaintiff Francisco Arrietta refused to let Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive take his cell phone to Plaintiff Francisco Arrieta explained that he could not give his phone to Defendants because it had all of his intimate and personal information, such as contacts, appointments, financial information, addresses, pictures, text messages, voicemails, and videos, which he did not want disclosed or available for others to view. Further Plaintiff Francisco Arrieta told Defendants it was his only phone that he used it for work and was the only way he could get in contact with people.

30.   Further Plaintiff Francisco Arrieta told Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive that he was afraid his phone would be damaged and/or the video of the beating would be destroyed.

31.   At this time, Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair told Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive to leave Plaintiff Melissa Quair's apartment.

32.   Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive refused to leave Plaintiff Melissa Quair's apartment until they got the cell phone.

33.    At this time, Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair asked to leave and attempted to leave Plaintiff Melissa Quair's apartment, however, Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive refused to let Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair leave Plaintiff Melissa Quair's apartment.

34.    Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer declared an unlawful freeze on Plaintiff Melissa Quair's apartment. Further, Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive refused to let Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair leave claiming it was now a criminal investigation and/or crime scene.

35.    Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair told Defendants Kern County Sheriffs Department Detective Kimmel and Kern County Sherriffs Department Detective Brewer and Does 1 through 50, inclusive that Defendants could not do this because Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair had not done anything wrong, Defendants did not have a warrant, and Defendants did not have probable cause to detain them.

36.    As Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair continued to ask to leave and/or tell Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive to leave, Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive grew more and more upset, including but not limited to threatening Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair by saying, "we can do this the easy way or the hard way."

37.     Additionally, as Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair continued to ask to leave and/or tell Defendants Kern County Sherriffs Department Detective Kimmel and Kern County Sherriffs Department Detective Brewer and Does 1 through 50, inclusive to leave, Defendants Kern County Sherriffs Department Detective Kimmel and Kern County Sherriffs Department Detective Brewer and Does 1 through 50, inclusive began to yell, raise their voices, and threaten Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair, including but not limited to, telling Plaintiffs, "to shut up."

38.     Moreover, as Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair tried to stand up and leave and/or tell Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive to leave, Defendants Kern County Sherriffs Department Detective Kimmel and Kern County Sherriffs Department Detective Brewer and Does 1 through 50, inclusive would walk up to Plaintiffs Francisco Arrieta, Sulina Quair, Laura Vasquez, and Melissa Quair  and without Plaintiffs' consent push, shove, and/or elbow each of them back into their seats while yelling, and threatening Plaintiffs Francisco Arietta, Sulina Quair, Laura Vasquez, and Melissa Quair to not move, not stand up, and keep sitting.

39.     Furthermore, Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive, threatened Plaintiffs that should they try to leave Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive would take them to jail.

40.     Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive prohibited Plaintiffs Francisco Arietta, Sulina Quair, Laura Vasquez, and Melissa Quair

from using their cell phones and prohibited Plaintiffs from lawfully posting information to the internet and their social media accounts regarding the violent incident they had lawfully witnessed and/or recorded, Plaintiffs Francisco Arietta, Sulina Quair, Laura Vasquez, and Melissa Quair were unlawfully restricted from disseminating, distributing, and/or sending any information they legally obtained regarding the violent encounter they had legally witnessed and recorded. Plaintiffs were threatened by Defendants Kimmel and Brewer and Does 1 through 50 inclusive that should Plaintiffs try to use their cell phones and post information concerning the recordings of the Silva beating then Plaintiffs would be taken to jail.

41.     Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive continued the above stated actions, including but not limited to detaining, yelling, threatening, and/or unlawfully touching and/or assaulting Plaintiffs for at least another four hours. Because Plaintiffs had not committed a crime nor were Plaintiffs suspected of such, Defendants did not have reasonable suspicion and/or probable cause to search and/or seize Plaintiff Francisco Arietta's cell phone.

42.     Defendants Kern County Sherriffs Department Detective Kimmel and Kern County Sherriffs Department Detective Brewer and Does 1 through 50, inclusive did not have permission, reasonable suspicion and/or probable cause to enter into Plaintiff Melissa Quair's apartment. Yet, Defendants Kern County Sherriffs Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive entered Plaintiff Melissa Quair's apartment without her consent, searched her home, put a "freeze" on her home, and went through her personal belongings, including but not limited to her purse, drawers, and/or bedroom.

43.     Despite Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50, inclusive lack of reasonable suspicion, probable cause, and/or failure to obtain a warrant,

Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive used their authority to coerce and intimidate Plaintiff Francisco Arietta so that Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer and Does 1 through 50, inclusive could go through Plaintiff Francisco Arietta's cell phone, including but not limited to his text messages, videos, pictures, voicemails, emails, and/or social media accounts etc. As a result, Plaintiff Francisco Arietta's fundamental right to privacy was unlawfully invaded.

44.    At some point during this incident Defendants Detective Kimmel, Detective Brewer, and County and Does 51 through 100, inclusive, were able to transfer over the videos of the recorded incident at KMC depicting the deputies beating and killing an unarmed man onto a SD card. Yet, for whatever reason, Defendants Detective Kimmel, Detective Brewer, and County and Does 51 through 100, inclusive, chose to tell Plaintiff Francisco Arrietta that there was a Judge order to take the phone. At no point did Defendants Detective Kimmel, Detective Brewer, and County and Does 51 through 100, inclusive, show or provide a Judge's order and/or search warrant to Plaintiff Francisco Arrietta relating to his personal cell phone. Plaintiff Arrieta continuously asked for a copy of the search warrant and none was provided.  Despite this deliberate misrepresentation, lack of Judge's order, and/or search warrant, Defendants Detective Kimmel, Detective Brewer, and County and Does 51 through 100, inclusive, seized Plaintiff Francisco Arrieta's cell phone despite Plaintiff's protests. Rather when the search warrant was demand by Plaintiff Francisco Arrieta, Defendants Detective Kimmel, Detective Brewer, and County and Does 51 through 100, inclusive, threatened and/or insinuated that they would arrest Plaintiff Francisco Arrieta if he did not relinquish his personal cell phone to them.

45.    As a result of the facts alleged above, Defendants Kern County Sheriff's Department Detective Kimmel and Kern County Sheriff's Department Detective Brewer

and Does 1 through 50, inclusive unlawfully detained, seized, and/or searched Plaintiffs for a minimum of four hours. At which point Defendants Kern County Sherriff's Department Detective Kimmel and Kern County Sherriff's Department Detective Brewer and Does 1 through 50 inclusive unlawfully seized and left with Plaintiff Francisco Arietta's cell phone.

46.   Defendants Kern County Sherriff's Department Detective Kimmel Kern County Sherriff's Department Detective Brewer, and Kern County Sherriff's Department Sgt. Smallwood and Does 1 through 50, inclusive planned, prearranged, and/or organized to unlawfully detain, seize, and/or search Plaintiffs to intimidate and threaten Plaintiffs into giving the cell phone to Defendants.

47.   Plaintiffs were unlawfully detained, seized, and/or searched because Plaintiffs had not committed a crime, nor was there reasonable suspicion and/or probable cause that Plaintiffs had committed a crime. Further, Defendants did not possess a valid warrant to detain, search, and/or seize Plaintiffs, including but not limited to Plaintiff Francisco Arieta personal items and Plaintiff Melissa Quair's home.

48.   Defendants without Plaintiff Francisco Arrieta's consent, disclosed, disseminated, and distributed contents such as Plaintiff's personal contacts, messages, pictures, videos, financial information, addresses, appointments, memories and/or voicemails saved within Plaintiff's cell phones to employees of the Kern County Sherriff's Department and other law enforcement agencies. These contents are of a highly personal nature to Plaintiff because it involves information surrounding Plaintiff daily living activities, financial information, addresses, appointments, contacts, thoughts, and memories. The dissemination of this kind of highly personal information to Plaintiff is offensive and objectionable because it represents the kind of information that is personal in its very nature.

49.   Defendants Detective Kimmel, Detective Brewer, and County and Does 51 through 100, inclusive did not give Plaintiff Francisco Arrieta his phone back until more

than a week later. Once Plaintiff Francisco Arrieta received his phone back all of his pictures, contacts, and some of the video depicting the beating of Mr. Silva was erased.

50.     The following morning, on May 8, 2013, at or near 10:00 a.m., Defendant Sgt. Smallwood and Does 1 through 50, inclusive, arrived at Plaintiff Melissa Quair's apartment and unlawfully seized, detained, and/or searched Plaintiffs Melissa Quair, Maria Melendez, Sulina Quair, and Laura Vasquez. Defendant Sgt. Smallwood did not allow Plaintiffs to leave the apartment even though no crime was committed, Defendant Sgt. Smallwood also ratified the unlawful conduct of the deputies and/or detectives whom refused to allow Plaintiffs to leave the apartment. Sgt. Smallwood refused to allow Plaintiff Melissa Quair's children from entering into their mother's home. Furthermore, Plaintiffs were informed during this incident that the apartment was now a crime scene and yellow crime scene tape was placed around Plaintiff Melissa Quair's home. Further Defendant Sgt. Smallwood seized Plaintiff Maria Melendez and her cell phone knowing there was no search warrant at the time. Throughout the second incident, Defendant Sgt. Smallwood was the highest ranking officer present from the Kern County Sheriff's Department, and instructed and permitted the unlawful actions and conduct of the other Kern County Sheriff's Department deputies and/or detectives who were also present at the time of the second incident. This incident went on for about three to four hours until Plaintiffs were told that a search warrant was obtained. However, Plaintiffs were not provided and/or shown this search warrant.

51.     Standard peace officer training includes training that it is unlawful to detain, seize, and/or search someone and/or their property without reasonable suspicion and/or probable cause of a crime, or a valid warrant.

52.     Standard peace officer training includes training that it is unlawful to use excessive force against individuals.

53.     Standard peace officer training includes training that it is unlawful to assault and batter individuals.

54.     Standard peace officer training includes training that it is unlawful to invade the privacy of individuals without reasonable suspicion and/or probable cause of a crime, or a valid warrant.

55.     Yet, a final policymaker of Defendant County, acting under color of law, who had final policymaking authority concerning the acts of Defendants Kimmel, Brewer, Smallwood, and Does 1 through 50, inclusive ratified such acts and the bases for them. The final policymaker knew of and specifically approved of the acts of Defendants Kimmel, Brewer, Smallwood, and Does 1 through 50, inclusive.

56.     A final policymaker has determined that the acts of the Defendants Kimmel, Brewer, Smallwood, and Does 1 through 50, inclusive were "within policy."

57.     Upon information and belief, Defendant County and Does 51 through 100, inclusive determined that the conduct of the Defendants Kimmel, Brewer, Smallwood, and Does 1 through 50, inclusive was "within policy" despite the facts, without limitation, that the Plaintiffs had not committed a crime, nor was there reasonable suspicion and/or probable cause of such action, were not combatant, obstructive, nor threatening against Defendants Kimmel and Brewer, and Does 1 through 50, inclusive.

58.     As an actual, legal and proximate result of the intentional, reckless, negligent and otherwise wrongful conduct of all Defendants, Plaintiffs have suffered, and continue to suffer, general and special damages, including but not limited to personal injury, emotional distress, trauma, past and continuing medical expenses, wage loss and loss of earning capacity.

### FIRST CAUSE OF ACTION

**Violation of Plaintiffs' Rights Secured by the Fourth and Fourteenth Amendments to be Secure in Their Home, and to be Free From the Use of Excessive Force and Unlawful Search, Seizure and/or Arrest, Pursuant to 42 U.S.C. §§ 1983, 1988.**
**[Against All Defendants]**

59.   Plaintiffs incorporate the foregoing allegations as if re-alleged herein.

60.   Plaintiffs assert their First Cause of Action against Defendants for violations of Plaintiffs' rights secured by the Fourth and Fourteenth Amendments to the United States Constitution to be secure in their home and residence, and to be free from the use of excessive force and unlawful seizure and/or arrest, pursuant to 42 U.S.C. §§ 1983, 1988.

61.   Defendants Kern County Sheriff's Department Detective Kimmel, Kern County Sheriff's Department Detective Brewer, Kern County Sheriff's Department Sgt. Smallwood conduct violated Plaintiffs' rights secured by the Fourth and Fourteenth Amendments to the United States Constitution to be secure in their home and residence, and to be free from the use of excessive force, and unlawful seizure and/or arrest, pursuant to 42 U.S.C. §§ 1983, 1988.  Inasmuch as Plaintiffs were unlawfully detained and/or seized, the use of excessive force against Plaintiffs and the unlawful seizure of Plaintiffs was a violation of their clearly established rights as secured by the Fourth Amendment.

62.   Defendants County, and Does 51 through 100, inclusive, are responsible for implementing, maintaining, ratifying, sanctioning and/or condoning policies, customs, practices, training and/or supervision of officer conduct, including, but not limited to, with respect to the use of force.  Said Defendants, inclusive, are culpable for their own action or inaction in the training, supervision, or control of their subordinates, for ratification or acquiescence in the constitutional deprivation of Plaintiffs' rights, and/or for conduct that showed a reckless or deliberate indifference to Plaintiffs' constitutional rights in failing to enforce its own policies and/or promulgating policies or conduct that deprives others,

including Plaintiff, of their constitutional rights. Said policies and/or customs were the moving force or cause of the deprivation of Plaintiffs' rights.

63.    Defendants County, and Does 51 through 100, inclusive, and each of them, knew or should have known that Defendants' training, policies, customs, and practices regarding detention, search and seizure, and/or the use of force, such as against Plaintiffs, was so inadequate that it was obvious that a failure to correct them would result in future incidents, such as the violations herein against Plaintiffs.

64.    At all relevant times herein, Defendants County, and Does 51 through 100, inclusive, authorized, ratified and/or acquiesced in the aforementioned policies, customs, practices, training and supervision and the commission of the type of acts by its officers similar to those which are alleged herein that have caused the injuries to Plaintiffs. Furthermore, said Defendants were deliberately indifferent to the probability of the occurrence of such acts and failed to correct said policies, customs, practices, training and supervision, thereby causing the damages alleged herein.

65.    Defendants County, and Does 51 through 100, inclusive, maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs set forth above and, based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), and, that policy, custom or practice was carried out by Defendants Kimmel and Brewer and Does 1 through 50 inclusive in violating Plaintiffs' rights guaranteed by the Fourth Amendment, Article 1, Section 13 of the California Constitution and California Civil Code § 43 to be secure in their person and premises, to be free from unlawful seizure and/or arrest, and free from the use of excessive force, and are therefore liable for all injuries sustained by Plaintiffs as set forth herein.

66.    By reason of the conduct of the Defendants, and each of them, as alleged herein, Plaintiffs were deprived, under color of law, of their rights guaranteed by the Fourth

Amendment to the United States Constitution to be free from unlawful seizure and/or arrest, without probable cause, and the use of excessive force.

67.    As a direct and proximate result of the acts of all Defendants, Plaintiffs suffered severe emotional and physical harm, including but not limited to anxiety, fear of retaliation from law enforcement, nightmares, fear of safety, property deprivation, embarrassment, and humiliation, and thus Plaintiffs seeks and is entitled to recover, general and special damages, including but not limited to medical expenses and physical, mental and emotional pain, shock, agony and suffering, in an amount according to proof at trial.

68.    The aforementioned conduct of the individual Defendants, was done maliciously, oppressively and with an intent to injure Plaintiffs and in conscious disregard for the rights and safety of Plaintiffs, such that an award of exemplary and punitive damages should be imposed against said individual Defendants in an amount to be proven at trial.

69.    Plaintiffs are entitled to recover their attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1988.

## SECOND CAUSE OF ACTION

**Violation of Plaintiffs' Rights to be Secure in Their Person and Premises, and Free From Unlawful Seizure and/or Arrest, and the Use of Excessive Force and, Pursuant to 42 U.S.C. §§ 1983, 1988**

**[Against All Defendants]**

70.    Plaintiffs incorporate the foregoing allegations as if re-alleged herein.

71.    All Plaintiffs assert their Second Cause of Action against all Defendants for the violation of Plaintiffs' rights secured by the Fourth Amendment to the United States Constitution to be secure in his person and premises, and free from unlawful seizure and arrest, and the use of excessive force, pursuant 42 U.S.C. §§ 1983, 1988.

72.    On or about May 8, 2013, and at all times relevant herein, Defendants COUNTY:

i.   received federal financial assistance within the meaning of 29 U.S.C.
§ 794(a) and *Zukle v. Regents of University of California*, 166 F.3d
1041, 1045 (9th Cir.1999);

ii.   constituted "programs or activities" within the meaning of 29 U.S.C.
§ 794(b) in that said Defendants were instrumentalities of state or
local government; and

iii.   were public entities within the meaning of 42 U.S.C. § 12131(1).

73.   Defendants' conduct as stated above violated Plaintiffs' rights secured by the Fourth Amendment to the United States Constitution to be secure in their person and premises, and to be free from unlawful seizure and/or arrest, and the use of excessive force, pursuant to 42 U.S.C. §§ 1983, 1988. Inasmuch as Plaintiffs were unlawfully detained, seized, and/or arrested, the use of excessive force against them and the unlawful seizure of Plaintiffs was a violation of their clearly established rights as secured by the Fourth Amendment.

74.   Defendant County and Does 51 through 100, inclusive are responsible for implementing, maintaining, sanctioning and/or condoning policies, customs, practices, training and/or supervision of officer conduct, including, but not limited to, with respect to the use of force. Defendant County and Does 51 through 100, inclusive, are culpable for their own action or inaction in the training, supervision, or control of their subordinates, for ratification or acquiescence in the constitutional deprivation of Plaintiffs' rights, and/or for conduct that showed a reckless or deliberate indifference to Plaintiffs' constitutional rights in failing to enforce its own policies and/or promulgating policies or conduct that deprives others, including Plaintiffs, of their constitutional rights.  Said policies and/or customs were the moving force or cause of the deprivation of Plaintiffs' rights.

75.   Defendant County and Does 51 through 100, inclusive, and each of them, knew or should have known that Defendant County's training, policies, customs, and practices regarding the use of force, such as against Plaintiffs, were so inadequate that it was obvious

that a failure to correct them would result in future incidents, such as the violations herein against Plaintiffs.

76.    At all relevant times herein, Defendants County, and Does 51 through 100, inclusive, authorized, ratified and/or acquiesced in the aforementioned policies, customs, practices, training and supervision and the commission of the type of acts by its officers similar to those which are alleged herein that have caused the injuries to Plaintiffs. Furthermore, said Defendants were deliberately indifferent to the probability of the occurrence of such acts and failed to correct said policies, customs, practices, training and supervision, thereby causing the damages alleged herein.

77.    Defendants County and Does 51 through 100, inclusive, maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs set forth above and, based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), and, that policy, custom or practice was carried out by Defendants Kimmel, Brewer, Smallwood, and Does 1 through 50 inclusive in violating Plaintiffs' rights guaranteed by the Fourth Amendment, to be secure in their person and premises, to be free from unlawful seizure and arrest, and free from the use of excessive force, and are therefore liable for all injuries sustained by Plaintiffs as set forth herein.

78.    By reason of the conduct of the Defendants, and each of them, as alleged, Plaintiffs were deprived, under color of law, of their rights guaranteed by the Fourth Amendment to the United States Constitution to be free from unlawful seizure and/or arrest, without probable cause, and the use of excessive force.

79.    As a direct and proximate result of the acts of all Defendants, Plaintiffs suffered severe emotional and physical harm, and thus Plaintiffs seek and are entitled to recover, general and special damages, including but not limited to medical expenses and physical,

mental and emotional pain, shock, agony and suffering, in an amount according to proof at trial.

80.   The aforementioned conduct of the individual Defendants Kimmel, Brewer, and Smallwood and Does 1 through 50 inclusive, was done maliciously, oppressively and with an intent to injure Plaintiffs and in conscious disregard for the rights and safety of Plaintiffs, such that an award of exemplary and punitive damages should be imposed against said individual Defendants in an amount to be proven at trial.

81.   Plaintiffs are entitled to recover his attorneys' fees pursuant to California Civil Code § 52.1(h).

### THIRD CAUSE OF ACTION

**Violation of Plaintiffs' right to freedom of speech and press under the First Amendment and Fourteenth Amendment of the Constitution of the United States.**

**[Against all Defendants.]**

82.   The foregoing allegations are incorporated as if re-alleged herein.

83.   Plaintiffs assert this Third Cause of Action for the violation of Plaintiffs' right under the First Amendment of the Constitution of freedom of speech and press.

84.   In engaging in the conduct alleged above, Defendants Kimmel, Brewer, Smallwood and Does 1 to 50, inclusive, improperly, seized Plaintiffs and restricted Plaintiffs from using their personal cell phones. Furthermore, Plaintiffs were unlawfully prohibited from publishing, circulating, distributing the material on their personal cell phone.

85.   As a direct and proximate result of the acts of Defendants, Plaintiffs suffered and seeks to recover general and special damages in an amount according to proof at trial.

86.   The aforementioned conduct was done maliciously, oppressively and with an intent to injure Plaintiffs, and in conscious disregard for the rights, and liberty of

Plaintiffs, such that an award of exemplary and punitive damages should be imposed against the individual Defendants in an amount to be proven at trial.

87.     Defendants Kimmel, Brewer, Smallwood, and Does 1 through 50, inclusive, are legally responsible for, and have a duty to pay, all of the damages, punitive or exemplary damages, penalties, attorney's fees, and costs set forth in his cause of action.

88.     Defendants County and Does 51 through 100, inclusive, are legally responsible for, and have a duty to pay, all of the damages, penalties, attorney's fees, and costs set forth in his cause of action, except for punitive or exemplary damages.

## FOURTH CAUSE OF ACTION

### Violation of Plaintiffs' Fourteenth Amendment to the Constitution of the United States to be free from the Deprivation of Property without Due Process.

### [Against All Defendants]

89.     The foregoing allegations are incorporated as if re-alleged herein.

90.     Plaintiff Francsico Arrieta asserts this Fourth Cause of Action for deprivation of her property without substantive due process in violation of the Fourteenth Amendment of the United States Constitution against all Defendants.

91.     Plaintiff Maria Melendez asserts this Fourth Cause of Action for deprivation of her property without substantive due process in violation of the Fourteenth Amendment of the United States Constitution against Defendant Sgt. Smallwood.

92.     In engaging in the conduct alleged above, Defendants Kimmel, Brewer, and Smallwood, and Does 1 to 50, inclusive, improperly, seized Plaintiffs and unreasonably interfered with the use of Plaintiffs' daily functioning by taking their cell phones and denying them access to communicate and contact their friends and family.  Furthermore, Plaintiffs' personal cell phone was later altered, tampered and damaged by Defendants.

93.    As a direct and proximate result of the acts of Defendants, Plaintiffs suffered and seeks to recover general and special damages in an amount according to proof at trial.

94.    The aforementioned conduct was done maliciously, oppressively and with an intent to injure Plaintiffs, and in conscious disregard for the rights, and liberty of Plaintiffs, such that an award of exemplary and punitive damages should be imposed against the individual Defendants in an amount to be proven at trial.

95.    Defendants Kimmel, Brewer, Smallwood, and Does 1 through 50, inclusive, are legally responsible for, and have a duty to pay, all of the damages, punitive or exemplary damages, penalties, attorney's fees, and costs set forth in this cause of action.

96.    Defendants COUNTY OF KERN and the Kern County Sheriff's Office, and Does 51 through 100, inclusive, are legally responsible for, and have a duty to pay, all of the damages, penalties, attorney's fees, and costs set forth in his cause of action, except for punitive or exemplary damages.

## FIFTH CAUSE OF ACTION

### Invasion of Privacy Under the Fourth Amendment to the Constitution of the United States.

### [Against all Defendants.]

97.    The foregoing allegations are incorporated as if re-alleged herein.

98.    Plaintiff Francisco Arietta asserts this Fifth Cause of Action for invasion of privacy and individual privacy rights under the Fourth Amendment to the United States Constitution pursuant to *Riley v. State of California,* (2014) 134 S.Ct. 2473 against all Defendants.

99.    Plaintiff Maria Melendez asserts this Fifth Cause of Action for invasion of privacy and individual privacy rights under the Fourth Amendment to the United States

Dated: May 7, 2015                          RODRIGUEZ & ASSOCIATES


                                    By:_____/s/ Chantal Trujillo_____/
                                        Chantal Trujillo, Esq.
                                        Attorneys for Plaintiffs