UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO ARRIETA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF KERN, DEPUTY ENRIQUE BRAVO, DEPUTY BRANDON RUTLEDGE, and DOES 1 to 100, Inclusive,<br><br>　　Defendants. | LEAD CASE 1:14-cv-00400-LJO-JLT<br><br>MEMBER CASE: 1:14-cv-00401-LJO-JLT<br>MEMBER CASE: 1:14-cv-00402-LJO-JLT<br>MEMBER CASE: 1:14-cv-00403-LJO-JLT<br>MEMBER CASE: 1:14-cv-00404-LJO-JLT<br>MEMBER CASE: 1:14-cv-00717-LJO-JLT<br>MEMBER CASE: 1:15-cv-00706-LJO-JLT<br><br>MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION (DOC. 59) |

## I. INTRODUCTION

Plaintiffs in the seven (7) above-captioned cases claim to have witnessed and/or videotaped a violent encounter on or about May 7, 2013 between unnamed Kern County Sheriff's Office (KCSO) Deputies and a man unrelated to Plaintiffs. Plaintiffs claim to have been subjected to unlawful treatment when KCSO officers seized the cellular telephones on which videos had been recorded.

## II. PROCEDURAL HISTORY

On March 31, 2014, Plaintiffs Francisco Arrieta, Laura Vasquez, Sulina Quair-Vasquez, Maria Melendez and Melissa Quair filed complaints in five of the above captioned cases against the County of Kern and unnamed KCSO officers. Doc. 1. The cases were consolidated on April 28, 2014. Doc. 12. On June 19, 2014, the Court granted Defendant's motion to dismiss Plaintiffs' case in part, but allowed Plaintiffs leave to amend most of the dismissed claims. Doc. 28.

On May 12, 2014 minor T.A. filed a related case, through his guardian ad litem. *T.A. v. County of Kern*, 1:14-cv-00717-LJO-JLT, Doc. 1. This case was consolidated with the other five cases on May 21, 2014. Doc. 15.

Plaintiffs in all six consolidated cases filed an amended complaint on July 15, 2014. First Amended Complaint ("FAC"), Doc. 32. Plaintiffs identified Deputy Enrique Bravo and Detective Brandon Rutledge as defendants.[1] They bring claims under state and federal civil rights statutes, as well as various tort theories. *Id.* Plaintiffs' claims are based on two separate events. The first occurred after midnight on May 8, 2013 at Melissa Quair's residence. FAC ¶¶ 17-39 ("Early Morning Events"). The second event occurred later that morning, between 10 am and noon, at the same location. *Id.* ¶¶ 40-52 ("Late Morning Events"). On April 22, 2015 the Court granted Defendants' motion for summary judgment as to Plaintiff Arietta's claims based on California Civil Code sections 51, 51.5, 51.7 and 52.1 against Defendants Bravo and Rutledge, as well as all of Arietta's federal civil rights claims against Rutledge. Doc. 55.

On May 7, 2015, Plaintiffs filed a related complaint against KCSO officers Kevin Kimmel, Kavin Brewer, and Sargent Bill Smallwood as well as new *Monell* claims against the County of Kern.[2] *Arrieta et al vs. County of Kern et al*, 1-cv-15-cv-00706-LJO-JLT, Doc. 2 (E.D. Cal. May 7, 2015) ("706 Compl."). Plaintiffs' first cause of action alleges that the individual Defendants are liable under section 1983 for unlawfully seizing them and for the use of excessive force. *Id.* ¶ 61. Their second cause of action appears to allege the same theory against the County as a *Monell* claim. *Id.* ¶ 77 (alleging that the County "maintained or permitted an official policy custom or practice of knowingly permitting the occurrence of the type of wrongs set forth above . . ."). Their third cause of action claims that Defendants' seizure of their cellular phones violated their First Amendment rights because they were "prohibited from publishing, circulating, distributing the material on their personal cell phones." *Id.* ¶¶ 83-84. Their fourth cause of action alleges that the phones were taken without due process. *Id.* ¶¶ 90-92. In their fifth cause of action, Plaintiffs allege that Defendants violated their Fourth Amendment rights

---

[1] Plaintiffs did not identify Rutledge by first name. Rutledge provides this information in a declaration. Decl. of Deputy Brandon Rutledge, Doc. 47-7.
[2] Plaintiffs did not identify Defendants by first name. Smallwood provides this information in his declaration. Decl. of Bill Smallwood ("Smallwood Decl."), Doc. 59-4.

2

when they searched the phones without warrants. *Id.* ¶ 98.

On August 3, 2015 the Court granted Defendants' motion to dismiss Plaintiffs' *Monell* claims because they were precluded by claims raised in the earlier case. Mem. Decision and Order Re: Defs.' Mot. to Dismiss ("706 MTD Order"), Doc. 17. On August 21, 2015, the Court consolidated this case with the earlier cases. Doc. 21.

Now before the Court is a motion for summary judgment brought by Kimmel, Brewer, Smallwood and the County as to claims brought *in the 706 Complaint only*. Mem. of P. & A. in Supp. of Defs.' Mot. For Summ. J. ("MSJ"), Doc. 59-1 at 2. Plaintiffs filed an Opposition. Pls.' Opp'n to Defs.' Mot. For Summ. J. ("Opposition"), Doc. 60. Defendants timely replied. Reply by Defs. ("Reply"), Doc. 62. The hearing set for the motion was taken off calendar pursuant to Local Rule 230(g). Doc. 63.

### III. PROCEDURAL ISSUES

**A.     Ruling On Objections**

Defendants object to Plaintiffs use of some of the evidence in the record. Doc. 62-1. They argue that evidence "does not support the proposition" that is asserted as fact, is not relevant, presents legal conclusions improperly submitted as facts, or should be excluded under the "adverse influence rule." Doc. 62-1. Such objections are unnecessary because they duplicate the summary judgment standard. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context."). "At the summary judgment stage, [a court] do[es] not focus on the admissibility of the evidence's form. [A court] instead focus[es] on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Therefore, Defendants' objections are OVERRULED.

**B.     Failure to Meet and Confer**

Plaintiffs argue that the MSJ should be denied as procedurally improper, since Defendants failed

to meet and confer with them prior to filing. Opposition at 12. Pursuant to this Court's orders, Docs. 64 and 66, Defendants have remedied this defect and certified that the issues raised in the MSJ should be addressed as submitted. Doc. 67. Since the procedural infirmity has been resolved, it is proper to rule on the substance of the motion.

## IV. FACTUAL BACKGROUND[3]

At around midnight, May 7, 2013, all Plaintiffs in this action, except Melissa Quair, witnessed a physical encounter between various law enforcement officers and David Silva in front of Kern Medical Center. Pls.' Resp. to Separate Statement of Undisputed Material Facts ("PSUMF"), Doc. 61, #1. Francisco Arrieta and Maria Melendez recorded videos of the encounter on their cell phones. *Id.* #2. Sulina Quair-Vasquez called 911 to report the incident and informed the dispatcher that Plaintiffs would be at a particular address in Bakersfield. PSUMF #2 & 3. Smallwood was supervising the investigation of the incident and directed Brewer and Kimmel to go to the residence. PSUMF #6; Smallwood Decl. at 2. Brewer and Kimmel arrived at the residence around 2:00 am. PSUMF #4. The parties dispute whether Plaintiffs consented to them entering the residence. *Id.* Kimmel testifies that he and Brewer were "allowed in." Decl. of Kevin Kimmel ("Kimmel Decl."), Doc. 59-5, ¶ 3. According to Quair they simply "walked in." Dep. of Melissa Quair ("Quair Depo."), Doc. 60 at Ct. R. 21-22. Quair-Vasquez, Vasquez, and Quair were at the apartment at this time; and the officers interviewed everyone there except Quair. PSUMF #4. Arrieta was not at the apartment when the officers arrived. Defs.' Resp. to Pls.' Additional Material Facts ("DPAMF"), Doc. 62-2, # 5. Quair testified that Kimmel and Brewer demanded that she call Arrieta and ask him to come to the residence. Quair Depo. at Ct. R. 29-30. Quair did so and Arrieta came to the apartment. DPAMF #8; Quair Depo. at Ct. R. 29-30.

Officers told Arrieta that they needed a copy of the video footage on his phone and informed

---

[3] Because on summary judgment the evidence of the non-moving party is assumed to be true and disputed facts are construed in the non-movants favor, the Court sets forth the undisputed facts and notes those disagreements of fact that are relevant to this decision.

4

him that he could not leave the residence with it in his possession. PSUMF #9. Arrieta refused to turn over his phone because the officers did not have a warrant.  DPAMF #14.  He did however, show officers the videos he had and offered to make them copies later that day. DPAMF #10, 11. Plaintiffs also assert that the officers were able to transfer the videos from his phone to an external file at that time. DPAMF #20. In support of this position, Plaintiffs point to the transcript of a recording of the Early Morning Encounter. "EME Transcript," Doc. 60 Ex. 2 & Ex. 5, at Ct. R. 76-78. In this transcript, Kimmel appears to acknowledge that the files were transferred successfully when he tells another officer, "We have, um, we have them transferred over to a SD card." *Id.* at Ct. R. 78. At this point Brewer tells him that another officer called, saying, "Raceburn just called. Take the phone. Period. Judge order.[4] Take the phone. . . .We have no choice now, [Arrieta]. We're going to have to take it." *Id.* He adds, "I would take it on the iPad if it was up to me." *Id.* at Ct. R. 79.  Quair also testified that she believed that the officers were able to transfer files to an external source. Quair Depo. at Ct. R. 28-29.

Defendants maintain that the officers were not able to transfer the files successfully. PSUMF #9. In support of this position they point to Kimmel's testimony, in which he states,

> [Arrieta's] phone was not linked to email so he could not email the video to us. Neither he, nor I, nor Detective Brewer were familiar enough with the phone to reliably transfer the video footage. We tried to use a digital tablet to take video of the cell phone's screen but the image was not discernable. We asked for a technician to be dispatched to the apartment, but [Arrieta] had to get to work and we did not know when the technician might be able to get there. . . I told him he could not leave with the cell phone. I told him this because I was concerned that the video footage would be erased accidentally.

Kimmel Decl. ¶ 6. They also point to Arrieta's own deposition, in which he affirms that the officers "said something to indicate" that they were not able to transfer the files. Dep. of Francisco Arrieta ("Arrieta Depo."), Doc. 59-3 at Ct. R. 17.

To prevent Arrieta from leaving, at one point, one of the officers "used one hand to push

---

[4] It is unclear what "Judge order" the officer was referring to, given that the undisputed facts show that the conversation in question occurred before a warrant issued.

5

1 Arrieta's left should back." PSUMF #8;[5] *see also* Arrieta Depo. at Ct. R. 21. Arrieta recalls that it was Kimmel who pushed him. *Id.* at Ct. R. 20. Kimmel, however, testified that it was Brewer. Kimmel Decl. ¶ 7. Defendants also assert that officers did not physically injure Arrieta. PSUMF #8. In support of this, Defendants point to Arrieta's deposition. *Id.* In response to the question of whether the push hurt him, Arrieta responded, "Not physically, no." Arrieta Depo at Ct. R. 21.   Plaintiffs dispute this characterization. *Id.* They point to Quair's testimony, where she describes that Brewer and Kimmel were "really aggressive with both of us and threatening to take us to jail or having another officer come into the house, putting on gloves, saying we can do this the easy way or the hard way." Quair Depo. at Ct. R. 24. The officers left around 5:30 am. PSUMF #5.

 Bravo and Rutledge went to the residence at ten a.m. that same morning. PSUMF #5. They spoke with Quair and Melendez. *Id.* They put a "freeze" on the apartment shortly thereafter. DPAMF # 28. Smallwood arrived some time later. PSUMF #5. The parties dispute whether he arrived a half an hour after the other officers arrived or whether he did not arrive until shortly before noon. *Id.* Smallwood testified that he arrived at about the same time as Plaintiffs' attorney, John Tello. Decl. of Bill Smallwood ("Smallwood Decl."), Doc. 59-4 at 2.  While Plaintiffs dispute this, saying that Smallwood arrived first, the evidence they point to does not contradict Smallwood's version of the events. PSUMF # 5-6; Tr. of Recording of Rutledge and Bravo ("LME Transcript"), Doc. 60 at Ct. R. 44-45 (Quair informs officers that Tello is "on his way over" around the same time that officers report that "Smallwood still out there."); Depo. of Brandon Rutledge ("Rutledge Depo."), Ct. R. 53-54 (describing only that Smallwood arrived a "half hour to an hour" after the officers arrived).

 Defendants produced a copy of a warrant to search the residence and seize the phones of Arrieta and Melendez. Search Warrant and Affidavit ("Warrant"), Doc. 59-3 at Ct. R. 25. The Warrant was sworn to and issued on May 8, 2013 at 11:37 am. *Id.* at Ct. R. 26. The Warrant notes that KCSO

---

[5] While the text of Defendants' assertion of PSUMF #8 is scrambled in Plaintiffs' version, it is clear in Defendants' original document. Doc. 59-2.

officers had possession of Arrieta's phone at the time it was issued. *Id.* at Ct. R. 25.

## V. STANDARD OF DECISION

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## VI. ANALYSIS

### A. Claims Against Smallwood

Defendants argue that Smallwood is not liable for any of the alleged constitutional violations because he did not participate in either the Early Morning or Late Morning Events. MSJ at 3-4. Plaintiffs argue that Smallwood is liable in his capacity as a supervisor. Opposition at 8-10.

Supervisory liability may be imposed against a supervisory official for his "own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations and citations omitted). Defendants argue that the extent of Smallwood's participation in the Early Morning Events was to direct officers to the residence to investigate. MSJ at 3. Plaintiffs argue that Smallwood also ordered Kimmel and Brewer to seize Arrieta's phone, citing to Kimmel's Declaration and Quair's Deposition. Opposition at 9; DPAMF #2. Kimmel, however, only testified that Smallwood directed him to the residence, not that Smallwood instructed him to seize the phone. Kimmel Decl. ¶ 2. Quair only testified that Kimmel and Brewer asked for the phones. Quair Dep. at Ct. R. 21-24. Because there is no evidence that Smallwood directed the officers to seize the phones, or that he condoned, ratified, or encouraged any other allegedly unconstitutional conduct during the Early Morning Events, he is not liable under section 1983.

Defendants argue that Smallwood cannot be liable for conduct that occurred during the Late Morning Events, either, because he did not have any direct dealings with Melendez. MSJ at 3. Plaintiffs claim that he was the highest ranking officer on site, and therefore must have been aware of the alleged

seizure of her house. Opposition at 10. They also claim that Smallwood "briefed Rutledge and Bravo" about obtaining Melendez's cell phone. PSUMF # 7. Defendants do not dispute that Smallwood was present or that he was the highest ranking officer, but they state that he was not there at the time the hold was placed on the house. *Id.* Bravo testified that they put a "freeze" on Quair's house around 10:15 am. Bravo Dep. at Ct. R. 66:19. While the evidence puts Smallwood at the house sometime after this point, that does not dispense of the issue. Viewing the facts in a light most favorable to Plaintiffs, it is reasonable to presume that Smallwood, as the highest ranking officer on the scene had the power to lift the "freeze" and end the seizure. Similarly, the probable cause statement for the search warrant puts Smallwood at the residence at the time Bravo seized Melendez's phone. Warrant, at Ct. R. 26. This is sufficient to show that there is a genuine dispute as to Smallwood's participation or acquiescence in the constitutional deprivations alleged to have occurred during the Late Morning Events. Thus, the Court GRANTS Defendants' motion for summary as to Smallwood's involvement in the Early Morning Events, but DENIES the motion as to his involvement in the Late Morning Events.

**B.** <u>**Excessive Force Claims**</u>

Defendants argue that the only "force" alleged by Plaintiffs occurred when either Kimmel or Brewer pushed on Arrieta's shoulder to prevent him from leaving. MSJ at 4-5. Defendants claim that this amount of force was reasonable under the circumstances. *Id.* at 5. Plaintiffs argue that officers also engaged in excessive force when they threatened Plaintiffs with jail time and physically blocked the door of the apartment to prevent them from leaving. Opposition at 11.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (internal quotations omitted). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right . . ." *Id.* "Under the Fourth Amendment there are two categories of police seizures." *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995), *as amended* (Jan. 17, 1996). "First, a police officer may seize a citizen for a brief

investigatory stop if the officer 'has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Second is a "full-scale arrest." *Id.* One test used in the Ninth Circuit to determine whether a "full-scale arrest" has occurred whether "a reasonable innocent person in these circumstances would not have felt free to leave after brief questioning." *Id.* (quoting *United States v. Delgadillo–Velasquez*, 856 F.2d 1292, 1295 (9th Cir. 1988)).

The undisputed facts show that Defendants "seized" at least two of the Plaintiffs (Arrieta and Quair) during the Early Morning Events. First, it is undisputed that Brewer and Kimmel prevented Arrieta from leaving the premise. PSUMF # 8 ("Arrieta tried to leave the apartment with his cell phone until Defendant Brewer used one hand to push Arrieta's left shoulder back."); PSUMF # 9 ("[Officers] told [Arrieta] he could not leave if they did not have the phone . . ."); DPAMF #18 ("Defendants Brewer and Kimmel threatened to take Arrieta to jail if he didn't turn over his phone."). Second, it is undisputed that one of the officers "kept his hand on the door" so that Arrieta and Quair were unable to leave. DPAMF # 17. Viewing the evidence in a light most favorable to Plaintiffs, the Court finds this is a sufficient basis for showing that Arrieta and Quair were arrested; a reasonable person in either of their places would not have felt free to leave.

Claims against law enforcement officers for the use of excessive force during an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 388; *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). The relevant question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to [the officers'] intent or motivation." *Graham*, 490 U.S. at 397. In making this determination, the trier of fact must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). In other words, "the type and amount of force inflicted" must be evaluated and weighed against such factors as "(1) the severity of the crime at issue, (2) whether

the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citing *Graham*, 490 U.S. at 396).

Plaintiffs submit that *any* amount of force would be excessive because they allege that the officers did not have probable cause for the arrests. Opposition at 11-12. In the Ninth Circuit, however, the fact that a warrantless arrest is made without probable cause does not necessarily render the force used to make the arrest unconstitutional. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015) (internal quotations omitted) ("[B]ecause the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa."). The force used may still be reasonable, "[w]here officers are presented with circumstances indicating that no crime was committed," though the "'severity of the crime at issue factor is necessarily diminished . . ." *Id.* at 1025.

Defendants argue that the force described by the evidence in this case was *de minimis* and therefore not actionable under section 1983. MSJ at 5. This Court has recognized an excessive force claim based on handcuffing generally requires evidence of non-*de minimis* injury to overcome a summary judgment motion. *Estate of Srabian ex rel. Srabian v. Cty. of Fresno*, No. 1:08-CV-00336-LJO, 2012 WL 6651122, at *3 (E.D. Cal. Dec. 20, 2012) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)). The Court now finds that this principle applies to other situations where police offers do not use handcuffs, but utilize other types of force to restrain individuals. Plaintiffs put forth no evidence that suggests that Arrieta, or any other Plaintiff, was physically injured during the encounter. PSUMF # 8. Thus, the allegation of a single push to the shoulder does not rise to the level of a constitutional violation, even alongside the fact that one of the officers may have been blocking the door. *See Wood v. City of Garden Grove*, 395 F. App'x 467, 469 (9th Cir. 2010) (finding that neither the flash of a camera nor the possibility that arrestee was struck by it while having a seizure amounted to excessive force where arrestee did not provide evidence of injury);

11

*see also Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994) (finding that a pushing an arrestee up against a wall "might have been unnecessary" but was not "plainly unlawful."). Plaintiffs' allegations that Defendants threatened to take them to jail are also unavailing because "in the context of questioning, verbal threats 'do not constitute the use of excessive force.'" *Marcilis v. Twp. of Redford*, 693 F.3d 589, 599 (6th Cir. 2012) (quoting *Giese v. Wichita Police Dep't*, 69 F.3d 547, No. 04–3439, 1995 WL 634173, at *2 (10th Cir.1995); *see also Widner v. Aguilar,* 398 F. App'x 976, 979 (5th Cir. 2010) ("[M]ere threatening language does not amount to a constitutional violation, giving rise to liability for an action pursuant to § 1983); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim.").

Because Plaintiffs have not put forth any evidence that Defendants used more than a *de minimis* amount of force, Defendants are entitled to summary judgment on this issue.

**C.** <u>***Monell* Claims**</u>

Defendants argue that Plaintiffs' *Monell* claims should be dismissed to the extent that they arise out of claims for which Defendants have been awarded summary judgment. Opposition at 6. Plaintiffs do not address this issue in their Opposition. The Court, however, dismissed the *Monell* claims, with prejudice, from the 706 Complaint. 706 MTD Order at 7-8. Therefore, Defendants' request for summary judgment on these claims is moot.

\\

**D.** <u>**Other Claims**</u>

It is not entirely clear if Defendants are seeking summary judgment on Plaintiffs' other claims, as the heading in which the relevant arguments are found is "Motion for Summary Adjudication by Defendants Brewer, Kimmel, and Smallwood of the Claims Arising From Alleged Excessive Force." MSJ at 4. Plaintiffs claim that Defendants' motion only addresses the issues of Smallwood's personal liability and the excessive force claims brought against Kimmel and Brewer. Opposition at 12.

Defendants, however, clearly argue in the text that the seizure of both Arrieta and his phone were lawful. MSJ at 5-6. Defendants' proposed order sought summary adjudication on all five causes of action. *See* Doc. 59-6. Additionally, their notice of motion argued that "Plaintiffs cannot adduce a triable issue of fact regarding their presence at the first event or their vicarious liability for anyone else's actions at that first event." Doc. 59. Therefore, Plaintiffs were on notice that these issues were raised. Further, interests of judicial and party economy dictate that this Court should address any issues that can reasonably be addressed pretrial.

### 1. <u>Seizure of Arrieta's Phone</u>

Plaintiffs' fourth cause of action alleges that Kimmel, Brewer, and Smallwood acted unlawfully when they seized Arrieta's phone. 706 Compl. ¶ 92. Defendants argue that the seizure was lawful because they had probable cause that his phone contained evidence of a crime and that exigent circumstances warranted their immediate action. *Id.* MSJ at 5-6. Plaintiffs do not dispute that Arrieta's phone contained videos of interest. PSUMF # 2. Nor do they dispute that a warrant was subsequently issued. PSUMF # 10. However, they claim that because they were able to provide copies of the videos to the officers, there was no immediate need to seize Arrieta's phone. Opposition at 6-7.

Liability under section 1983 lies only if the seizure is unreasonable. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989). In "the ordinary case, seizures of personal property are unreasonable within the meaning of the Fourth Amendment, without more, unless ... accomplished pursuant to a judicial warrant, issued by a neutral magistrate after finding probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (internal quotations omitted). "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Id.* "[T]he exigencies of the circumstances" may permit temporary seizure without warrant. *United States v. Place*, 462 U.S. 696, 701 (1983). To evaluate whether such a seizure is reasonable, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the

governmental interests alleged to justify the intrusion." *Id.* at 703. The following four factors apply to this test:

> (1) whether the police had probable cause to believe that the defendant's [property] contained evidence of a crime or contraband;
> (2) whether 'the police had good reason to fear that, unless restrained,' the defendant would destroy the evidence or contraband before the police could return with a warrant;
> (3) whether 'the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy; and
> (4) whether 'the police imposed the restraint for a limited period of time'—in other words, whether the 'time period was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant.'

*United States v. Song Ja Cha*, 597 F.3d 995, 1000 (9th Cir. 2010) (quoting *Illinois*, 531 U.S. at 331-32).

Here, Defendants argue that the officers were justified in seizing Arrieta's phone prior to obtaining a warrant because it contained evidence of a crime they were investigating. Opposition at 5-6. They claim that the officers were concerned that Arrieta might inadvertently erase the videos and that they sought a warrant expeditiously. *Id.* at 6. Plaintiffs, however, argue that it was not necessary to seize the phone because the officers were able to make a copy of the videos in question. Opposition at 11. Defendants deny that officers were able to copy the videos successfully. PSMUF # 9. In support, they point to Kimmel's testimony. Kimmel Decl. ¶ 6. They also point to Arrieta's own deposition, where affirms that it was his understanding that the officers were not able to get a copy of the video that night. Arrieta Depo. at Ct. R. 17. Plaintiffs, however, point to the transcript of the Early Morning Events as evidence that the officers actually did make copies of the videos prior to seizing the phone and obtaining a warrant. PSMUF # 9. In this transcript, Officers Kimmel and Swanson appear to be describing the successful transfer of the videos to an external source. EME Transcript at Ct. R. 76-78. Defendants argue that transfer to the SD card was inadequate because it was "not the original medium for recording the subject images" and that the "original medium was the phone." Reply at 5. This argument, however, does not undermine the effect of Plaintiffs' evidence because Defendants do not point to any *evidence* that an SD card copy would have been inadequate. Rather, they argue that they failed to make any

copies at all. PSMUF #9. Further, Quair testified that she believed that the officers were able to make viable copies of the videos. Quair Depo. at C.R. 28.

Plaintiffs' evidence is sufficient to show that there is a genuine dispute as to whether the officers were able to make copies of the videos prior to seizing Arrieta's phone. This issue is critical to evaluate the second factor of the reasonability analysis ("[W]hether the police had good reason to fear that, unless restrained, the defendant would destroy the evidence or contraband before the police could return with a warrant." *Song Ja Cha*, 597 F.3d at 1000). Thus it is material to the determination of whether the seizure was reasonable. For this reason, the Court DENIES Defendants' motion for summary judgment as to Plaintiffs' fourth cause of action.

### 2. Seizure of Arrieta

As discussed above, the undisputed facts show that Arrieta was arrested by the police officers during the Early Morning Events. Defendants argue that the arrest was warranted because there was probable cause that Arrieta was violating Cal. Penal Code § 148 (which penalizes someone "who willfully resists, delays, or obstructs any public officer, peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . ."). "In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005). As discussed above, there is a genuine dispute as to facts concerning the lawfulness of the officers' demands for Arrieta to surrender his phone. These facts are, by extension, material to whether there was probable cause to detain him. Thus, the Court DENIES Defendants' motion for summary judgment as Arrieta's claims based on his allegedly unlawful seizure.

### E. Defendants' Previous Motion for Summary Judgment

Defendants state that they are still waiting for a reply as to one of the issues raised in their previous motion for summary judgment: whether claims made Plaintiffs other than Arrieta should be dismissed. MSJ at 6, n. 1. Since the judgment on that motion has been entered, the Court will treat

Defendants' request as a motion for reconsideration. *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (holding that district courts have an obligation to hear motions requesting reconsideration of summary judgments). A motion for reconsideration is treated under Federal Rule of Civil Procedure Rule 59(e) if it is filed within ten days of entry of judgment, or as a Rule 60(b) motion if it is filed after ten days. *Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). Here the judgment was entered on April 23, 2015. Doc. 55. Since the motion in this case was filed well after the ten day deadline, it will be considered a Rule 60(b) motion. Rule 60(b)(1) allows the court, "[o]n motion and upon such terms as are just," to relieve a party from a final order for "mistake, inadvertence, surprise, or excusable neglect" if filed "within a reasonable time not exceeding the time for appeal." *Gila River Ranch, Inc. v. United States*, 368 F.2d 354, 357 (9th Cir. 1966). The deadline for filing an appeal is thirty days. Fed. R. App. P. 4(a)(1)(A). Since the deadline for appeals has long since passed, their request is untimely. The Court observes, however, that Defendants rely on the same arguments to dismiss claims brought by other defendants that they raised against Arrieta's claims. *See* Doc. 47-1. The Court also notes that Plaintiffs did not raise any objections to Defendants' arguments based on timeliness or for any other reason. Therefore, in the interests of party and judicial economy, the Court will use its discretion and address Defendants' request.

In their April 2015 motion, Defendants argued that there was no evidence that Bravo or Rutledge were present for the Early Morning Events, and therefore should be relieved of liability for them. The Court found that there was a genuine dispute as to whether Bravo, but not Rutledge was present during the Early Morning Events for the purpose of addressing Arrieta's claims. Doc. 55 at 7. The parties relied on the same evidence with respect to the claims of the other Plaintiffs. Doc. 47-1 at 5-6. Therefore, the Court's grant of summary judgment as to claims against Rutledge, but not Bravo, shall be extended to include claims brought by the other Plaintiffs on the basis of his participation in the Early Morning Events. The Court's previous orders shall be amended accordingly.

## VII. CONCLUSION AND ORDER

For these reasons the discussed above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment, Doc. 59, as follows:

The Court GRANTS Defendants' motion for summary as to Smallwood's involvement in the Early Morning Events, but DENIES the motion as to his involvement in Late Morning Events.

The Court GRANTS Defendants' motion as to Plaintiffs' first cause of action, to the extent that the claims are based on excessive force.

The Court DENIES Defendants' motion as to Plaintiffs' first cause of action to extent that the claims are based on unlawful arrest.

The Court DENIES Defendants' motion as to Plaintiffs' *Monell* claims as MOOT.

The Court DENIES Defendants' motion as to Plaintiffs' fourth cause of action.

Additionally, the Court amends its previous order, 1-14-cv-00400-LJO-JLT, Doc. 55, such that it GRANTS summary judgment as to all federal civil rights claims lodged against Rutledge in Plaintiffs' First Amended Complaint, Doc. 32, to the extent that these claims are predicated on his participation in the Early Morning Events.

Finally, the Court ordered the parties to file a joint status report addressing whether or not consolidation should be extended to include trial. Docs. 15 & 56. The original deadline for this report was ten days after either the dispositive motions deadline or the date on which dispositive motions were ruled upon. *Id.* As the parties' deadline for submitting their joint pre-trial statement of the case is approaching, *see* L.R. 281, the parties will be allowed to file their statement alongside it.

IT IS SO ORDERED.

Dated: **February 10, 2016**              **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE